[Crim. No. 14062. In Bank. Jan. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JAMES CARROLL, Defendant and Appellant.

582

■■■■■■■■■■■■■

## Counsel

William James Carroll, in pro. per., Michael Korn, under appointment by the Supreme Court, and Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**McCOMB, J.**—Defendant appeals from a judgment convicting him of first degree robbery of Pat Morano (count 1), first degree robbery of Ronald Norman Gulsvig (count 2), and assault with intent to murder Gulsvig (count 3). The trial court sentenced defendant to state prison on all counts, but suspended execution of the sentence on the third count pending completion of the terms under counts 1 and 2, which terms were ordered to run concurrently.[1]

The record shows that on June 1, 1968, shortly after midnight, defendant was in the rest room of the Jet Bird Bar, which is owned by Pat Morano in El Monte. Defendant had a turtleneck sweater pulled up over his face. Gulsvig entered the rest room, and defendant pointed a gun at him, saying, "Hand me your wallet." When defendant found that the wallet Gulsvig handed him contained no money, he threw it on the wash basin. Gulsvig slammed one of the interior rest room doors in defendant's face and ran back into the bar. Defendant pursued him, shouting, "Where is that s.b., I'm going to kill him." Defendant fired two shots at Gulsvig, one of which grazed his chin. Gulsvig then ran behind the bar to hide. Later, defendant came behind the bar to the cash register and noticed Gulsvig on the floor. Gulsvig threw a case of empty beer bottles at defendant. Defendant simultaneously shot Gulsvig in the abdomen, inflicting a serious wound. Defendant then removed money from the cash register and left the bar.

Count 2 of the amended information (relating to the robbery of Gulsvig) charged that defendant "with intent to inflict injury, did inflict great bodily injury upon the person of Ronald Norman Gulsvig" during commission of the robbery of Gulsvig. At the conclusion of the trial, the trial court stated

---

[1]Execution of the sentence on count 3 was suspended, apparently because of the rule against multiple punishments as set forth in *In re Wright,* 65 Cal.2d 650, 655 [56 Cal.Rptr. 110, 422 P.2d 998].

■■■■■■

from the bench: "In Count 2, to clarify the record, the Court has found that the defendant is guilty of robbery in the first degree, that the defendant did inflict great bodily injury upon the person of Ronald Gulsvig." Pursuant to section 213 of the Penal Code, as amended in 1967, a finding that in the course of the commission of a first degree robbery the defendant, with intent to do so, inflicted great bodily injury on the victim of the robbery increases the punishment.[2]

█ Question: *Did the trial court properly find that defendant, with the intent to do so, inflicted great bodily injury upon Gulsvig's person during commission of the robbery of Gulsvig?*

*Yes.* █ It should be noted, to begin with, that the taking of Gulsvig's wallet constituted a robbery even though defendant discarded it as soon as he discovered it was empty. It may reasonably be inferred that at the time defendant demanded and received the wallet it was his intention to deprive the owner of it permanently. (See *People* v. *Hall,* 253 Cal.App.2d 1051, 1054 [2] [61 Cal.Rptr. 676].)

Defendant contends, however, that after he discovered there was no money in Gulsvig's wallet and threw it on the wash basin, the robbery of Gulsvig was completed, and that any offense thereafter committed was separate and distinct and did not occur in the commission of his robbery of Gulsvig.

█ In considering the words of a statute, an appellate court is required to read the statute in the light of the objective sought to be achieved by it, as well as the evil sought to be averted. (*Wotton* v. *Bush,* 41 Cal.2d 460, 467 [7] [261 P.2d 256]; *People* v. *Weger,* 251 Cal.App.2d 584, 590 [6] [59 Cal.Rptr. 661].) █ The clear intent of the Legislature in increasing the penalty for first degree robbery by the 1967 amendment to section 213 of the Penal Code was to discourage robbers from inflicting great bodily injury on their victims and thereby provide a measure of protection for robbery victims, including such unfortunate victims as Gulsvig, who possessed nothing worth stealing.

█ The fact that defendant was not engaged in the asportation of any loot at the time he shot Gulsvig is immaterial. He became angry after discovering no money in the wallet and having the rest room door slammed

---

[2]Section 213 of the Penal Code, as amended in 1967, provides: ". . . The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and *in the course of commission of the robbery,* with the intent to inflict such injury, inflicted great bodily injury *on the victim of the robbery,* such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life." (Italics added.)

in his face. His purpose in running into the bar appears to have been to exact his revenge from Gulsvig. Under the circumstances, the robbery and shooting of Gulsvig constituted one indivisible transaction, with the shooting flowing directly from the taking of the wallet.

In addition, it is settled that the crime of robbery is not confined to the act of taking property from victims. The nature of the crime is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety. (*People* v. *Anderson,* 64 Cal.2d 633, 638 [2] [51 Cal. Rptr. 238, 414 P.2d 366]; *People* v. *Ketchel,* 59 Cal.2d 503, 523-524 [30 Cal.Rptr. 538, 381 P.2d 394].) In the present case, defendant had not won a place of temporary safety at the time he shot Gulsvig, as a result of which the robbery of Gulsvig had not been completed, and the shooting occurred "in the course of commission of the robbery" of Gulsvig.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.