UNITED STATES, Appellee,

v.

James W. CHAMBERS, Jr., Private First Class, U. S. Army, Appellant.

No. 39,904.

SPCM 14647.

U. S. Court of Military Appeals.

March 22, 1982.

For Appellant: *Captain John Lukjanowicz* (argued); *Lieutenant Colonel John F. Lymburner, Major Robert D. Ganstine* (on brief); *Colonel Edward S. Adamkewicz, Jr.*

For Appellee: *Captain Eugene R. Milhizer* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Rexford T. Bragaw, III* (on brief).

*Opinion of the Court*

COOK, Judge:

Tried by special court-martial, military judge alone, the accused was convicted, in accordance with his pleas, of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922. The military judge sentenced the accused to a bad-conduct discharge, confinement at hard labor for 4 months, forfeiture of $225 pay per month for 4 months, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement and forfeitures to 3 months, but otherwise approved the sentence.

Both here and before the United States Army Court of Military Review, the accused has contended that the facts admitted in his providence responses did not constitute the offense of robbery and, hence, his pleas were improvident. The Court of Military Review ruled against the accused. *United States v. Chambers*, 9 M.J. 933 (A.C. M.R.1980). We specified (10 M.J. 245) the following issue:

WHETHER THE COURT OF MILITARY REVIEW ERRED BY AFFIRMING THE ROBBERY CONVICTION INSTEAD OF THE LESSER INCLUDED OFFENSE OF LARCENY.

We hold that the Court did not err, and we affirm.

■ Since the accused was convicted pursuant to his pleas and the factual matters underlying the offense were not litigated at trial, we are limited to the facts stated in his responses to the military judge during the providence inquiry. *United States v. Joseph*, 11 M.J. 333 (C.M.A.1981).

■ Article 45, UCMJ, 10 U.S.C. § 845, requires that a guilty plea be in accord with the actual facts. *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977); *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980). But there is no requirement that any independent evidence be produced to establish the factual predicate for the pleas. *United States v. Davenport, supra*. Thus, to hold his plea provident, we must determine that the military judge and the court below correctly concluded that: the specification alleges within its four corners all the elements of the offense charged; the accused pleaded guilty to that specification; and, the inquiry establishes not only that the accused believed he was guilty, but also that the factual circumstances as revealed by the accused objectively support the plea. *United States v. Davenport, supra*.

During the plea inquiry, the military judge correctly stated the elements of the crime of robbery. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). After ascertaining that the accused agreed his conduct had been accurately described by the specified elements, the military judge asked accused to relate, in his own words, the facts surrounding the commission of the offense. *United States v. Davenport, supra; United States v. Care, supra*. The accused stated that he was in a guesthouse where his girl friend was employed, and, at closing time, he assisted his girl friend and another person in walking one of the patrons to the door. While doing this, he noticed a 50-Deutsche-Mark note in the patron's shirt pocket. He helped the patron to his car, and subsequently left with his girl friend to go to her apartment. When they arrived, his girl friend asked him if he had taken the 50-Deutsche-Mark note; he responded that he had not. He then returned to the guesthouse to buy cigarettes from a vending machine. After purchasing the cigarettes, he saw the patron leaning against his car and the 50-Deutsche-Mark note lying on the ground nearby. He picked up the note, and the patron grabbed him and hit him in the chest. The accused responded by striking the patron several times, at which time the patron released him and he left the scene. At that point in the trial proceedings, the military judge informed accused that the facts he had related might be inconsistent with his plea of guilty to robbery. The accused then went back over the details of the encounter and said, in pertinent part:

ACC: He was standing there when I went to get the cigarettes; and he was standing there when I came out. And I walked on over there by him—walked around his car; and I seen the 50 Deutsche Marks laying on the ground.

And I picked up the 50 Marks; and as I was picking it up, he reached down, and he grabbed me. And he was telling me that was his—in a way he was telling me that was his money. He was talking in German. I could understand a little because, you know, he said, "my money," you know. And so he swung at me and hit me in my chest; and I swung and hit him back. And he hit me again; and I hit him two more times. And I—me and he laid up against the car; and he let me go, you

know. And I went on and took the 50 Deutsche Marks and went on back to my girl friend's apartment and spent the night.

. . . . .

MJ: Now, there are other potential problems; but it seems to me that at this point we don't have a taking by force or violence, even assuming that the subsequent violence by the accused was inexcusable. I don't believe that I can properly accept a plea of guilty.

. . . . .

DC: It is the defense's contention that the taking was sufficiently close enough to the German National here that it was indeed a violent taking, because the German had indicated that it was his money and that the accused knew that it was the German's money by his previous contact with the 50 Deutsche Mark bill and also by seeing that it was the same bill on the ground; and that the taking was from the person at that time with the accused's knowledge that he knew that the money was the German's.

. . . . .

MJ: Let me ask you this, PFC Chambers: When you picked up that 50 Deutsche Marks, who, if anybody, did you think it belonged to?

ACC: It belonged to him, sir, the German.

MJ: But it was lying on the sidewalk, on the ground?

ACC: Yes, it was, Your Honor.

MJ: Just how far away from him was the money?

(The accused and his counsel conferred).

ACC: It was very close, Your Honor. I would say it was about two feet away from where he was at.

. . . . .

MJ: And then what did you do? You put it in your pocket. What happened next?

ACC: I put in my pocket; and he grabbed—while I was picking it up, he grabbed me by my shirt; and I stuck it in my pocket. And he swung at me and said that was his money. Then I hit him.

. . . . .

MJ: All right, as I understand it, you picked up this bill; and as you were doing so, he grabbed you?

ACC: Yes, Your Honor.

. . . . .

MJ: Once again, PFC Chambers, I want to make sure I have got one or a couple of things straight.

First of all, you have indicated that you knew that the money, the bill belonged to this individual; is that right?

ACC: Yes, Your Honor.

MJ: And, secondly, it is my understanding that you were in the process of picking it up when the German grabbed you? Is that right?

ACC: Yes, Your Honor.

MJ: You had—in other words, you had bent over to pick it up?

ACC: Yes, Your Honor.

MJ: I assume you were coming up?

ACC: And he grabbed me.

MJ: He grabbed you before you got it in your pocket?

ACC: Yes, Your Honor.

MJ: It was at that point that you then—he hit you, and you hit him a couple of times?

ACC: Yes, Your Honor.

MJ: And that broke it up; is that right?

ACC: Yes, Your Honor.

MJ: Now, my research didn't disclose any cases directly on point; but a review of *Perkins* and other sources satisfies me that the force and violence here was contemporaneous with the taking. Consequently, the facts as indicated by PFC Chambers are sufficient to make out a robbery. PFC Chambers, is there anything else about what happened, or about what you did, that you haven't told me that you think is important? In other words, do you believe that you have given me a complete picture of what happened?

ACC: Yes, Your Honor.

The military judge then continued with the inquiry mandated by *United States v. Care, supra.*

The Court of Military Review concluded that, on the basis of the facts as related by accused, the taking of the bill was not complete when the German patron commenced his struggle with the accused and the patron's efforts were aimed at retaining, rather than regaining, possession of his property. They thus found that the requirements for a provident plea of guilty to robbery were satisfied.

We might, in other cases, terminate our inquiry at this point since the tests set out earlier have been met and the findings of the military judge and the Court of Military Review are reasonably and substantially supported by the evidence of record. *United States v. Quintana,* 5 M.J. 484 (C.M.A. 1978); *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976); *United States v. Carmichael,* 21 U.S.C.M.A. 530, 45 C.M.R. 304 (1972); *United States v. Jackson,* 3 U.S.C.M.A. 646, 14 C.M.R. 64 (1954). However, there remains the question of the application of the law to these facts as highlighted by our specified issue.

Robbery, both at common law and under more modern statutes, is a compound offense combining larceny (an offense against property) with assault (an offense against the person). *United States v. Calhoun,* 5 U.S.C.M.A. 428, 18 C.M.R. 52 (1955). The combined nature of robbery is recognized by the fact that the punishment for robbery is more than that for the two included offenses when they are joined.[1] *See* Table of Maximum Punishments, para. 127c, Manual for Courts-Martial, United States, 1969 (Revised edition).

Robbery is the taking, with intent to steal, of anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property or the person or property of a relative or member of his family or of anyone in his company at the time of the robbery.

Stated another way, there must be a larceny of property from a person or in his presence,[2] and that larceny must have been against the will of that person and "by means of force or violence or" by putting him in fear. Para. 201, Manual, *supra.* The early view of robbery required that the time of the exercise of force or fear must either "precede or be concurrent with the taking of the victim's property." Thus, when "possession of the property [was obtained] without the use of force or fear but [the defendant] then employ[ed] force or fear in order to keep the property or to effect his escape," it generally was held not to be robbery. 2 Wharton's Criminal Law and Procedure § 559 (1957); *see* Annotation, 58 A.L.R. 656. In more modern times, both by decision and by statute, a divergence has arisen in the perspective with which courts have viewed the force involved in the taking of property. Some courts have adhered to the earlier view that the force or violence must occur prior to, or concurrently with, the physical act of taking the property; others have regarded the entire event of the robbery as a continuing transaction. Under this later definition, the use of force or intimidation in retaining the property, or the use of force or violence in attempting to escape with it, has been found to suffice to establish robbery.[3] *See*

---

1. It is the aspect of force or violence directed against a person that makes robbery a serious crime. Thus the value of the property taken does not affect the quantum of punishment; instead it is the method of taking that is the gist of the crime. 67 Am.Jur.2d, Robbery, § 13. It is the nature of the offense which made it an "infamous" crime in common law. *See generally* 1 Wharton's Criminal Law § 22 (14th ed. 1978).

2. Although apparently conceded by defense counsel, we have no difficulty in concluding that the property was taken from the presence of the possessor of the property. *See* 4 Wharton's Criminal Law § 473 (14th ed. 1981); 67 Am.Jur.2d, Robbery, § 12 and cases cited therein; *see also* Annotation, 42 A.L.R.3d 1381.

3. We need not decide whether force occurring when the defendant tries to escape after aban-

Annotation, 93 A.L.R.3d 643; 67 Am.Jur.2d, Robbery, §§ 26, 28. The latter view has been enunciated in at least one military case. In *United States v. Hamlin*, 33 C.M.R. 707, 710 (1963), *pet. denied*, 13 U.S. C.M.A. 713, 33 C.M.R. 436 (1963), the Air Force Board of Review held:

> While the force essential to robbery need not precede, or be simultaneous with, the taking of the property, it must be contemporaneous with such taking in the sense that the force be concurrent or concomitant with it. [Citation omitted.]

We think there is merit to the view that, where the force or violence to a person occurs contemporaneously[4] with a felonious taking of property, the elements of robbery are satisfied.[5] The offense of larceny is not complete until asportation occurs, and the fruits of the crime are secured. *See United States v. Seivers*, 8 M.J. 63, 65 (C.M.A.1979); *United States v. Escobar*, 7 M.J. 197 (C.M. A.1979). If the force or violence, or the threat thereof, happens before asportation is completed and the taker secures the fruits of the crime, that force or violence, or threat thereof, supplies the necessary element which converts larceny to robbery. Our Uniform Code of Military Justice, being of modern origin, does not prohibit such a definition. In fact, the language of Article 122 includes the concept that robbery is a continuing offense. The elements of robbery need not be satisfied within a razor-thin space of time like the stopped action of instant replay; a robbery is an event happening within a continuum of time. Whether the force or violence immediately precedes or is contemporaneous with the taking should not logically be of decisional significance so long as it relates directly to the taking.

> A thief who finds it necessary to use force or threatened force after a taking of property in order to retain possession may in legal contemplation be viewed as one who never had the requisite dominion and control of the property to qualify as a "possessor."

> 4 Wharton's Criminal Law § 478 (14th ed. 1981).[6]

We here hold that where the force occurred during the course of the larceny of the property from the presence of the victim, as part of the accused's attempt to secure possession of the property and safety for himself, it was sufficient to satisfy the requirements of Article 122 of the Uniform Code. Consequently, it follows that the accused's knowing pleas of guilty to that offense were provident, and the Court of Military Review's action sustaining the conviction of robbery was correct.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

---

doning the property constitutes robbery. *See People v. Carroll*, 1 Cal.3d 581, 83 Cal.Rptr. 176, 463 P.2d 400 (1970).

4. Webster's Third New International Dictionary 491 (1961), defines contemporaneous as "existing or occurring during the same time."

5. This conclusion is consistent with the protection of the person which is "the gist of the offense." 67 Am.Jur.2d, Robbery, § 13.

6. Model Penal Code § 222.1 defines robbery as follows:
> (1) A person is guilty of robbery if, in the course of committing a theft, he:
> (a) inflicts serious bodily injury upon another; or
> (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or

> (c) commits or threatens immediately to commit any felony of the first or second degree.
> An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.
> 2 ALI, Model Penal Code and Commentaries 96 (1980).
> The commentary accompanying this section states:
> The thief's willingness to use force against those who would restrain him in flight suggests that he would have employed force to effect the theft had the need arisen. Thus, such an actor is presumably a person who presents the special dangers that the robbery statute is designed to reach and who is an appropriate subject for the sanctions designed for that purpose.
> *Id.* at 104.