[No. E011516. Fourth Dist., Div. Two. Mar. 24, 1994.]

REDLANDS COMMUNITY HOSPITAL, Plaintiff and Appellant, v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Joy Young Stephenson for Plaintiff and Appellant.

Galton & Helm, Stephen H. Galton and David A. Lingenbrink for Defendant and Respondent.

**OPINION**

**McDANIEL, J.***—Insurance Code section 10119 requires an insurer to cover, "from and after the moment of birth," the newborn infant of any

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.

covered family, but is silent as to the duration of such coverage.[1] In this case, we hold that such unconditional coverage extends for 31 days after the birth. We also hold, because the insured here did not apply for coverage for her newborn twins until 49 days after their birth, which application was denied by the insurer, New England Mutual Life Insurance Company, on medical grounds, that the trial court properly granted the insurer's motion for summary judgment. Such motion was brought by the insurer in the underlying action filed against it by Redlands Community Hospital seeking payment for the 35 days the twins remained in the hospital after the "covered" 31-day period.

### Factual and Procedural Background

On September 27, 1989, Rebecca Rivas (Rivas) gave birth to premature twins at Redlands Community Hospital (plaintiff). The twins were hospitalized until December 2, 1989. When the twins were born, Rivas was an employee of Dura Plastic Products, Inc. (Dura) in Beaumont, and was insured under a group benefit plan provided by Dura and underwritten and administered by New England Mutual Life Insurance Company (defendant).

At the time of the birth, the plan provided in relevant part: "COVERAGE FOR SICK NEWBORN [¶] If you incur expenses for a Newborn Child for treatment of . . . prematurity: [¶] then benefits will be payable under this Plan for 31 days after the birth of the child, even if you do not have Dependent coverage. However, *you must submit a written application for Dependent coverage to the Company within 31 days after the birth of the child and make the required contribution for Dependent coverage in order for the coverage to continue.*" (Italics added.)

The plan further provided: "If you do not make application for Dependent coverage within this 31-day period, then you will have to submit Proof of Good Health for your Dependents to the Company. Coverage for your Dependents will not start until the Company approves the Proof of Good Health for your Dependents. Coverage for your Dependents may be denied."

---

[1] Insurance Code section 10119 recites: "On and after the operative date of this section: [¶] No policy of disability insurance which, in addition to covering the insured, also covers members of the insured's immediate family, may be issued or amended in this state if it contains any disclaimer, waiver, or other limitation of coverage relative to the accident and sickness coverage or insurability of newborn infants of an insured *from and after the moment of birth* or of any minor child placed with an insured for adoption from and after the moment the child is placed in the physical custody of the insured for adoption. [¶] (b) Each such policy of disability insurance shall contain a provision granting immediate accident and sickness coverage to each newborn infant of, and each minor child placed for adoption with, any insured as required by subdivision (a)." (Italics added.)

Unless otherwise noted, all statutory references are to the Insurance Code.

An earlier version of the plan (hereinafter referred to as the first plan), which was in effect until September 1, 1989, 26 days before Rivas gave birth, did not include the foregoing provisions and recited in relevant part: "You may cover a dependent only by making a written request on the form furnished by the Policyholder for all of your dependents, present and future. *The request may be made at any time you have a qualified dependent but, if you elect to cover your dependents more than 31 days after you first acquire a qualified dependent, you may be required to produce, at your own expense, evidence of insurability* satisfactory to [defendant] for each dependent you then have." (Italics added.)

A "qualified dependent" was defined in relevant part as an unmarried child from birth to age 19.

On November 15, 1989, *49* days after she gave birth, Rivas applied for dependent coverage. Defendant declined coverage, "based on information received from the medical report."

Thereafter, plaintiff, as Rivas's assignee, filed a complaint against Dura for: (1) "Healthcare Reimbursement," (2) breach of contract, and (3) relief from forfeiture (because of any failure by plaintiff or Rivas to perform any conditions required by defendant's alleged agreement to pay for the reasonable value of the twins' medical care). According to the allegations of plaintiff's first amended complaint (hereafter referred to as the complaint): (a) plaintiff rendered medical services to Rivas and to her newborn dependents continuously from September 27, 1989, to December 2, 1989; (b) at the time plaintiff rendered such services, the dependents met the applicable requirements for participation in the plan; (c) Dura inappropriately limited payment of plaintiff's and Rivas's claims for such services to the first 31 days thereof; and (d) Dura was indebted to plaintiff in the total amount of $151,396.64.

After Dura answered the complaint, plaintiff filed an amendment thereto adding the insurer as a defendant.

Defendant in turn then answered the complaint, denying its allegations and alleging several affirmative defenses. Among such defenses were that: (1) Rivas had failed to submit a written application for dependent coverage as required by the plan, and (2) plaintiff's claims were preempted by the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq. [ERISA]).

The case being thus at issue, defendant noticed a motion for summary judgment, on the ground that Rivas failed to comply with the relevant terms

of the plan.[2] In support of its motion, defendant submitted the following separate statement of undisputed material facts (Code Civ. Proc. § 437c, subd. (b)):

"1. The health plan at issue in this lawsuit is an employee welfare benefit plan ('the Plan'), and is therefore governed by ERISA."

"2. The Plan was self-funded."

"3. The Plan provided that coverage for a newborn child terminated on the 32nd day after birth unless the employee designated the newborn as a dependent and paid the required dependent premiums prior to this date."

"4. The newborn children at issue in this lawsuit were born on September 27, 1989."

"5. An application for dependent coverage for the newborn children was not submitted to either DURA or [defendant] on or before October 27, 1989."

"6. The required dependent premiums for the newborn children were not submitted to either DURA or [defendant] on or before October 27, 1989."

In opposition to the motion, plaintiff denied that defendant's "facts" Nos. 2 (the plan was self-funded), 3 (the plan terminated coverage for the newborn on the 32d day after birth unless the employee had designated the newborn as a dependent and paid the required premiums) and 6 (the failure to submit the required premiums) were undisputed.

In addition, plaintiff asserted that the following material facts were disputed:

"1. The group policy in effect at all relevant times was not the policy identified by Defendant in its moving papers . . . . Instead, the group policy identified as Plaintiff's Exhibit 1 [the earlier policy, *ante*] was the operative policy."

"2. The operative group policy . . . did not have a time period during which the insured must request dependent coverage."

"3. At the time the operative group policy . . . was in effect, Defendant . . . acted as an insurer because it was involved with spreading and underwriting risks."

---

[2]Dura later joined in the motion. Dura is not a party to this appeal.

"4. As an insurer, Defendant . . . is not protected by ERISA and is subject to the relevant provisions of the California Insurance Code which requires mandatory coverage for newborn[s] during the period that Defendant . . . denied coverage."

"5. The Plan was insured and *not* self funded." (Italics in original.)

In support of plaintiff's opposition, plaintiff's attorney submitted a declaration stating that the case "[was] still in the discovery process."

At the hearing on the motion, the court stated it was ready to grant a continuance to allow plaintiff to engage in further discovery as to which policy applied and as to the relationship between defendant and Dura, in other words, as to whether defendant was acting as an insurer and therefore was subject to section 10119. Defendant's attorney responded that further discovery was unnecessary, and that he would concede, for the purposes of the motion, that the first plan applied and that section 10119 also applied. The attorney argued that section 10119 did not require the plan to insure newborns "forever."

Plaintiff's attorney responded that "[there] are cases here in California that say[] if it's one continuous treatment or one continuous coverage that's requested after the moment of birth, then coverage is necessary and should be provided in such instances." The attorney said she would be "more than happy to provide . . . the applicable cases that interpret [section 10119]."

The trial court took the matter under submission, and then issued a minute order which recited in relevant part: "The court's tentative decision on this motion is that even with the concessions made in open court, the defendant is entitled to summary judgment *except* that the issue raised by plaintiff during the hearing regarding continuous treatment requires additional points and authorities. [¶] The court directs each party to furnish points and authorities on the issue of whether or not, because the new[ ]born twins were receiving continuous treatment from the date of birth, the coverage has to extend as necessary for that treatment without regard to any other requirement of the plan." (Italics in original.)

Thereupon, plaintiff furnished points and authorities in which it argued that hospital benefits were payable "for injury occurring within the policy period although hospitalization occurred after lapse of the policy," and that the hospitalization here "originated . . . during a period of coverage . . . [and] extended beyond the period of coverage." *However, plaintiff did not, as its attorney had promised the trial court, provide the court with any cases relating either to newborns or to section 10119.*

After defendant submitted points and authorities, the trial court issued a minute order which recited in relevant part: "Motion for Summary Judgment is GRANTED. The court finds that the policy did provide access to insurance coverage, as required by Ins. Code 10119 [citing the first plan] . . . and plaintiff cites to no cases interpreting Ins. Code 10119, that hold[] that the statute is designed to cover extended illnesses of newborns 'even though' [the] insured did not elect coverage within the time specified for insurance coverage without proof of insurability."

A formal judgment reflecting the latter minute order was later entered in favor of defendant and Dura. This appeal followed.

## DISCUSSION

In our view, plaintiff in opposing the motion for summary judgment did not raise any triable issues of material fact. Thus our decisional task is to resolve the legal issues presented by the undisputed facts. In reference thereto, plaintiff contends first that Rivas's application for coverage for the newborns was timely and that the trial court erred in finding that she "did not request coverage within the required period." *The court made no such finding.* What the court did find, as noted, was that Rivas "did not elect coverage *within the time specified for insurance coverage without proof of insurability.*" (Italics added.) The finding was based on the provision, in the first plan, that, "if you elect to cover your dependents more than 31 days after you first acquire a qualified dependent, you may be required to produce . . . evidence of insurability." In view of such provision, the trial court's finding reflected the undisputed facts, and plaintiff's contention to the contrary is without merit.

■ Without citing any supporting authority, plaintiff contends next that the foregoing requirement to produce "evidence of insurability" in any application made more than 31 days after the acquisition of a qualified dependent violates section 10119, because such requirement constitutes a prohibited "limitation of coverage relative to the . . . sickness coverage or insurability of newborn infants of an insured *from and after the moment of birth.*" (§ 10119, italics added.)

The key question raised by such contention is the meaning of the phrase "from and after the moment of birth." Plaintiff asserts that it means "for a prolonged and continuous illness . . . originating *from* the time of birth" (italics added), and that it applies only to "*sick newborns.*" (Italics in original.) Defendant, on the other hand, asserts that the phrase means "[for] a reasonable 31 day . . . grace period during which the parents of the

newborn(s) must take the steps necessary to add the newborn(s) to coverage," and, inferentially, that it applies to all newborns, healthy as well as sick.

In construing a statute, ". . . a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts. It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports." (*In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 359 [95 Cal.Rptr. 652].) "In considering the words of a statute, an appellate court is required to read the statute in the light of the objective sought to be achieved by it as well as the evil sought to be averted." (*People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400].)

Plaintiff contends that the language of section 10119 is "plain and unambiguous," because it "expressly precludes any limitations relative to the sickness coverage of a *newborn* infant." (Italics in original.) According to plaintiff, "[t]he [s]tatute does not require perpetual coverage of *any* infant. It merely restricts insurance companies such as Respondent from limiting coverage to *sick newborns*." (Italics on "any" added; italics on "sick newborns" in original.) In other words, the statute requires perpetual coverage of a sick newborn *from* the moment of birth, but does not require any coverage of a healthy newborn who becomes sick at some undefined time *after* the moment of birth. However, while such an interpretation addresses the significance of "from," it ignores the significance of "after."

Moreover, undesirable consequences would flow from plaintiff's interpretation. For example, an infant who was discharged from the hospital two days after birth and then had to return to the hospital the following day would not be covered, because the sickness was not apparent "from the moment of birth," while an infant whose sickness was apparent at birth and who remained in the hospital for the same three-day period would be covered.

If we assume that the purpose of the statute was to provide coverage where no coverage existed (see *post*), and if we further assume that no coverage existed for a three-day-old infant, then the statutory coverage should apply to such an infant whether or not its sickness was apparent from the moment of birth.

A further undesirable consequence of applying the statute only to sick newborns is that their parents would have no incentive to apply for coverage, while parents of healthy newborns who did apply for coverage would be unable to obtain it if their newborns became ill before the applications were processed.

Plaintiff's interpretation is also undermined by the legislative history of the statute and the historical circumstances of its enactment. Section 10119 originated in 1971 from Assembly Bill No. 643, 1971 Regular Session. Assembly Bill No. 643 provided coverage only for "newborn infants of an insured," and did not contain any provisions for coverage of "any minor child placed with an insured for an adoption." The statute was amended in 1987 (Assem. Bill No. 1822, 1987-1988 Reg. Sess.) to provide for such additional coverage.

The Legislative Counsel's Digest of the original bill, Assembly Bill No. 643, *supra*, provides no guidance as to the meaning of "from and after the moment of birth." An undated memo, furnished by the Legislative Research Institute and identified by the Institute as an analysis of Assembly Bill No. 643 by the Assembly Committee on Finance and Insurance, states in relevant part: "There is no law which states that insurers . . . must provide insurance coverage for newborn children of persons who have insurance coverage. *As a matter of practice, such coverage is usually offered when the child is one month old, but there is no coverage during his first month of life.* [¶] *This bill attempts to overcome that problem* and provides that any insurance policy for accident and sickness which covers a family and its dependents must also cover the family's newborn children from its [*sic*] moment of birth." (Italics added.)

A second undated memo furnished by the Legislative Research Institute and identified as an analysis of Assembly Bill No. 643 by the Senate Committee on Insurance and Financial Institutions states in relevant part: "*As a customary practice, accident and sickness insurance coverage is usually offered after the newborn child is two weeks to one month old, but there is no such coverage provided from the moment of birth.*" (Italics added.)

The foregoing analyses show that the purpose of the bill was to provide coverage for the two-week to one-month period during which no coverage

existed, irrespective of when, during such period, the need for coverage arose. Such purpose supports defendant's position that "from and after the moment of birth" refers to a 31-day grace period during which the insureds must apply for coverage of their newborns, and defeats plaintiff's position that the statutory phrase refers to perpetual coverage of any illness which was apparent at the moment of birth.

Plaintiff relies on a report from the Department of Public Health (the Department) which states in relevant part: "This legislation promises to make available better care for many newborns who are premature or afflicted with some problem that requires intensive care or prolonged hospitalization." Plaintiff argues that the foregoing statement shows that the newborns here, who were premature and required prolonged hospitalization, "were just the type of newborns that the [L]egislature had in mind when it enacted § 10119."

However, while we may and should consider statements in legislative committee reports about what the Legislature had in mind when it enacted the statute, we may not consider any such statement by the Department. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692 [170 Cal.Rptr. 817, 621 P.2d 856] [" 'In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; *no guarantee can issue that those who supported his proposal shared his view of its compass.*' " (*Id.* at pp. 699-700, italics added.)].)

Moreover, even if we could consider the Department's statement, it would not have the import of the legislative committees' express and implied statements that the purpose of the bill was to provide coverage for the two-week to one-month period during which no coverage existed. ("A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed [legislation] rather than merely an expression of personal opinion." (*California Teachers Assn.* v. *San Diego Community College Dist., supra*, 28 Cal.3d 692, 700.))

In view of the legislative committees' statements here, which clearly are "a reiteration of legislative discussion and events leading to adoption of proposed [legislation]," to allow the statutory coverage to continue indefinitely for "sick newborns" would defeat the Legislature's intent in enacting the statute.

On the basis of the foregoing analysis, we hold that the unconditional coverage of a newborn infant in section 10119 extends for 31 days after the birth. We also hold that the provision in defendant's first plan requiring evidence of insurability in any application made after the 31-day period was not a prohibited "limitation of coverage" under the statute. Accordingly, because there were no triable issues of material fact raised in the trial court and because the critical policy provision was valid as a matter of law, the trial court properly granted defendant's motion for summary judgment.

Defendant contends that it is entitled to attorney fees under ERISA. However, as noted, defendant conceded in the trial court that ERISA did not apply to plaintiff's claims and that such claims were governed by section 10119. Accordingly, defendant is not entitled to attorney fees under ERISA.

DISPOSITION

The judgment is affirmed. Defendant's request for attorney fees is denied.

Ramirez, P. J., and Dabney, J., concurred.