Filed 10/22/14  P. v. Konepachit CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075412 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F03312) |
| v. | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| DAVID KONEPACHIT, | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed in this case on September 24, 2014, be modified as follows:

Page 6, second paragraph, first sentence, replace the word "defendant" with "Brown," so that the sentence reads:  But Brown told the officer the men resumed beating him after one of them went through his pockets.

1

Page 6, second paragraph, third sentence, replace the word "defendant" with "Brown," so that the sentence reads:  Beating Brown after the property was taken could reasonably be construed as part of the robbery:  an attempt to help the assailants escape before Brown could respond.

Page 6, fourth paragraph, first sentence, replace the word "reasonably" with "reasonable" so that the sentence reads:  In reviewing for sufficiency of the evidence, we must make every reasonable inference in support of the conviction.

This modification does not change the judgment.

FOR THE COURT:

          BLEASE          , Acting P. J.

          ROBIE          , J.

          MAURO          , J.

Filed 9/24/14 (unmodified version)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID KONEPACHIT,<br><br>Defendant and Appellant. | C075412<br><br>(Super. Ct. No. 13F03312) |

A jury convicted defendant David Konepachit of second degree robbery (count one) and battery with serious bodily injury (count two).  The jury also found true an enhancement allegation that defendant personally inflicted great bodily injury.  The trial court sustained additional enhancement allegations and sentenced defendant to 16 years in state prison.

1

Defendant now contends (1) his robbery conviction is not supported by the evidence, because there is insufficient evidence that he formed the intent to steal before or during the battery; (2) the trial court failed in its sua sponte duty to instruct on theft as a lesser included offense of robbery; and (3) there is insufficient evidence of serious bodily injury to support the battery conviction.

We conclude the evidence supports the convictions, and the trial court did not have a sua sponte duty to instruct on theft as a lesser included offense to robbery. We will affirm the judgment.

BACKGROUND

Bryan Brown became intoxicated while drinking with friends at his friend's apartment and at a bar. He and his friends subsequently went to a Denny's restaurant around 1:50 a.m. Defendant was at a table in the restaurant with three women and a Hispanic man.

Brown entered the men's restroom at the restaurant around 2:25 a.m. Restaurant video cameras recorded activity in the dining room but not in the restroom. The restroom was unoccupied when Brown entered, but defendant and the Hispanic man at his table soon moved toward the men's restroom about 40 seconds apart.

Brown was at the urinal and heard the door open, then shut, then open again. When Brown turned his head to look, he was struck on the side of the head. Brown fell against the bathroom stall divider and turned to face his attacker. A second man grabbed Brown and threw him into a toilet stall. Brown was hit two or three times in the head, fell to the ground, and was kneed or kicked in the ribs. One of the assailants got on Brown's back and repeatedly hit him in the back of his head.

The assailants went through Brown's pockets and then resumed the attack. Brown tried to get up, but one of the men yelled "stay down" and kicked Brown on the left side of his face. One of the men said "he's done" and the assailants left the bathroom. The assailants left the restaurant together; the women in their group also left.

2

Brown never lost consciousness but he did not get a good look at the faces of his assailants. He asked his friends if they had seen "those guys." Two of his friends rushed outside; one obtained a license plate number and called 911. The license plate number was assigned to a vehicle registered at the address where defendant lived. Defendant was arrested at his home at around 3:45 a.m. on May 25, 2013. His clothing matched that worn by one of the men in the Denny's video. Defendant had $793 in cash when he was arrested.

Brown did not realize anything was taken until the responding officer asked him whether anything was missing. He noticed that his wallet, cell phone, and portable cell phone charger were taken. Brown first thought he had only $5 in cash, but was reminded that two of his friends had given him $200 while at Denny's to pay their share of the tab at the Mix bar earlier that evening.

Brown was taken to the emergency room where he received five stitches for a one-centimeter laceration under his right eye. His right eye was completely swollen shut and there was swelling around his left eye. The emergency room doctor described the injury to the right eye as significant. Brown told the doctor his pain level was an eight out of 10. He had contusions on his face consistent with being hit in the head. Several days later, Brown had bruising caused by the broken blood vessels under the eye. He did not sustain a skull fracture or concussion.

Defendant called a friend from the Sacramento County Main Jail on May 25, 2013, at around noon. He said the police had taken his money and the victim had little, if anything, in his pockets.

Testifying on his own behalf, defendant said he went to the Denny's restaurant with a girl and had just met the Hispanic man seated near him. Defendant paid the tab for the table. He went to the restroom, where he saw Brown and the Hispanic man talking trash to each other. Defendant said he went into the disabled access stall and heard the sounds of fighting.

3

Defendant said he saw the Hispanic man on top of Brown, who was on all fours. Defendant was shocked but did not intervene because it was none of his business. The Hispanic man took something black from Brown's back pocket. As defendant left, the Hispanic man continued to punch Brown. As defendant walked to the front exit, he noticed the Hispanic man behind him. Defendant walked rapidly out of the restaurant because he had just witnessed a fight.

The Hispanic man ran past defendant and threw something in a trash can. Defendant and his date got in his car and left. After dropping off his date, defendant went home.

Defendant said he obtained the cash in his possession from his father after helping with construction work. He said his comment in jail about the content of Brown's pockets reflected his belief that the Hispanic man had taken everything from Brown's pockets.

The jury convicted defendant of second degree robbery (Pen. Code, § 211 -- count one)[1] and battery with serious bodily injury (§ 243, subd. (d) -- count two). In addition, the jury found true an enhancement allegation that defendant personally inflicted great bodily injury. (§ 1192.7, subd. (c)(8).)

The trial court sustained allegations that defendant had a prior strike, a prior serious felony, a prior prison term, and that he committed the offenses while released on bail. (§§ 12022.1, 1170.12, 667.5, 667, subds. (a), (b)-(i).) It sentenced him to 16 years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

DISCUSSION

I

Defendant contends his robbery conviction is not supported by the evidence, because there is insufficient evidence that he formed the intent to steal before or during the battery.

"To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict -- i.e., evidence that is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]"  (*People v. Ramon* (2009) 175 Cal.App.4th 843, 850, italics omitted.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]"  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Robbery is the taking of personal property from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.  (§ 211; *People v. Harris* (1994) 9 Cal.4th 407, 415.)  To support a robbery conviction, the evidence must show that the intent to steal arose either before or during the commission of the act of force, otherwise the taking will at most constitute a theft.  (*People v. Bolden* (2002) 29 Cal.4th 515, 556.)

Defendant relies on Brown's trial testimony, noting that Brown said he did not realize he was missing any items until the police asked him if he was missing anything. Defendant also points to consistent testimony from the officer who initially interviewed Brown.  Defendant concludes it is not clear when the property was taken from Brown.

5

Defendant acknowledges that Brown told another officer in a later interview[2] that the men told him to stay down and then went through his pockets. According to defendant, however, if the theft occurred at that point, it would not prove that the intent to steal was formed prior to the assault. Defendant argues it is "equally likely that the intent to steal was formed when Mr. Brown was on the ground and after the assault had concluded."

But defendant told the officer the men resumed beating him after one of them went through his pockets. A robbery is not complete until the robber "has won his way to a place of temporary safety." (*People v. Carroll* (1970) 1 Cal.3d 581, 585; *People v. Fierro* (1991) 1 Cal.4th 173, 226.) Beating defendant after the property was taken could reasonably be construed as part of the robbery: an attempt to help the assailants escape before Brown could respond. Because the assailants took Brown's property between beatings, the property was taken during the application of force, providing the appropriate nexus to support the robbery conviction.

Other evidence supports an inference that defendant formed the intent to steal before the use of force. Brown did not know defendant or interact with him or his associates before entering the restroom. Defendant was in the Denny's restaurant before Brown. While at the restaurant, but before Brown entered the restroom, Brown's friends gave Brown $200 for their share of the bar tab earlier that evening. The assailants entered the restroom soon after Brown entered, and Brown was attacked as he was turning his head to see who had entered the restroom. There is no evidence that the assailants had any other motive to follow a stranger into the restroom and attack him.

In reviewing for sufficiency of the evidence, we must make every reasonably inference in support of the conviction. And if a fact could support both guilt and

---

[2] Brown's first interview with an officer was on the day of the incident, May 25, 2013. The second interview took place on June 6, 2013.

6

innocence, we must affirm the conviction.  Here, we conclude the robbery conviction is supported by substantial evidence.

II

Defendant next contends the trial court failed in its sua sponte duty to instruct on theft as a lesser included offense of robbery.  Once again, the contention is based on the alleged lack of evidence that Brown's property was taken before or during the use of force.

" 'It is well settled that the trial court is obligated to instruct on necessarily included offenses -- even without a request -- when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 715.)  However, "[a] criminal defendant is entitled to an instruction on a lesser included offense only if [citation] 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*.  [Citations.]" (*People v. Memro* (1995) 11 Cal.4th 786, 871.)

While theft is a lesser included offense of robbery, lacking only the element of force or fear (*People v. Melton* (1988) 44 Cal.3d 713, 746), the evidence in this case did not support an instruction on theft as a lesser included offense.  As we have explained, there is substantial evidence that defendant formed the intent to steal before or in between the application of force, and there is no evidence that the property was taken after the attack.  The trial court did not have a sua sponte duty to instruct on theft as a lesser included offense.

III

Defendant further contends there is insufficient evidence of serious bodily injury to support the battery conviction.

7

Section 243, subdivision (f)(4) provides:  " 'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following:  loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

" '[S]erious bodily injury,' as used in section 243, is ' "essentially equivalent" ' to ' "great bodily injury," ' as used, for example, in the section 12022.7 enhancement for the infliction of such injury on a person during the commission of a felony.  [Citations.]" (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149.)  " '[G]reat bodily injury' means a significant or substantial physical injury."  (§ 12022.7, subd. (f).)

The injury need not be permanent, prolonged, protracted, or even result in impairment or loss of bodily function.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) All that is required is substantial injury beyond that inherent in the particular offense. (*Ibid*.)

The determination of great bodily injury is essentially a question of fact for the jury.  Where the evidence is sufficient to sustain the jury's finding, the court is bound to accept it, even if the circumstances may reasonably be reconciled with a contrary finding. (*People v. Escobar, supra*, 3 Cal.4th at p. 750.)

As a result of defendant's attack, Brown required stitches to his right eye and temporarily lost the use of that eye while it was swollen shut.  Brown experienced a pain level of eight on a scale of one to 10.  He had bruising several days after the attack. Moreover, the emergency room doctor said Brown sustained a significant injury.  The

8

jury could reasonably conclude that defendant inflicted serious bodily injury as defined in section 243; accordingly, defendant's contention lacks merit.

DISPOSITION

The judgment is affirmed.

                                                _____MAURO_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____ROBIE_____, J.