Filed 5/20/15  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

|  |  |
|---|---|
| THE PEOPLE, | C076795 |
| Plaintiff and Respondent, | (Super. Ct. No. CM038053) |
| v. | |
| MARCUS DIMITRI JONES, | |
| Defendant and Appellant. | |

Defendant Marcus Dimitri Jones pleaded guilty to home invasion robbery (Pen. Code, § 211)[1] and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and was sentenced to four years eight months in state prison.  On appeal, he contends the trial court erred in awarding victim restitution.  We disagree and affirm.

---

[1]  Undesignated statutory references are to the Penal Code.

1

# BACKGROUND[2]

Defendant met an acquaintance, Christopher South, at a casino in Oroville on January 24, 2013. The two men discussed defendant's former neighbor, Karl Rauch. Defendant believed that Rauch kept firearms in his home. At some point, defendant and South were joined by a third man, Derek Pierce.[3] The three men decided to break into Rauch's house and steal his guns. They drove to Rauch's house together in defendant's borrowed Volvo.

Rauch was sitting in the living room of his Oroville home that night when two men wearing bandanas over their faces entered the home, sprayed him with pepper spray, and demanded money and guns. One of the men went into the bedroom to look for valuables. The other stood by the front door keeping a lookout. Although the probation report is not entirely clear, a third man may have also entered the home and joined the robbery a short time later.

After a while, the lookout began to panic. He ran into the bedroom, and then ran out of the house. Sensing his opportunity, Rauch ran outside and yelled for help. The three men, who were later identified as defendant, South, and Pierce, fled the scene.

The probation report contains inconsistent accounts of the robbers' getaway. According to South, all three men fled the scene of the robbery in Rauch's pickup truck. Although the probation report is not clear, South appears to imply that defendant initially drove the truck, while South rode in the bed. As South tells it, the robbers got into an argument while they were making their escape and pulled over. South hit defendant in

---

[2] Because the conviction was based on a plea, the following facts are derived from the probation report. As we shall discuss, the probation report is inconsistent as to some of the facts. We note these inconsistencies where relevant.

[3] We considered Pierce's unrelated challenge to the trial court's restitution order in *People v. Pierce* (2015) 234 Cal.App.4th 1334 (*Pierce*).

the face and ordered Pierce to "get the fuck out" of the truck. He then got into the truck and drove away by himself.

Defendant tells a different story. According to defendant, he left the scene of the robbery in the Volvo, accompanied by Pierce. Defendant denies driving away in Rauch's truck. However, he admits telling South about Rauch and the guns.

Pierce's account is largely the same as defendant's. Like defendant, Pierce claims that he fled the scene of the robbery in defendant's borrowed Volvo. He denies getting into Rauch's truck.

For all of its inconsistencies, the probation report is clear as to what happened next. As South was driving away in Rauch's truck, he was spotted by a Butte County Sheriff's deputy. South attempted to evade the deputy and a high-speed chase ensued. The chase ended when South crashed into a fire hydrant, damaging both the truck and hydrant, and knocking over a utility pole. The falling utility pole disturbed the overhead lines, which caused sparks to fly. The sparks from the overhead lines descended onto a vacant home, causing a fire. As we shall discuss, the challenged restitution order awards restitution to AT&T and PG&E for damage to the utility pole, and to William Kumle, the owner of the vacant house, for damage caused by the fire.

South was arrested at the scene of the crash. Defendant and Pierce were arrested shortly thereafter.

On March 12, 2013, an information was filed charging defendant and Pierce with first degree robbery in concert. (§§ 211, 213, subd. (a)(1)(A).) Defendant pleaded not guilty to the charge and denied the allegation.

3

On May 2, 2013, defendant withdrew his earlier plea and entered a plea of guilty to first degree robbery. (§ 211.)[4] The prosecutor dismissed the section 213, subdivision (a)(1)(A) allegation in exchange for defendant's plea.

On June 20, 2013, defendant was sentenced to state prison for a term of four years eight months (the middle term of four years for the robbery, plus one-third the middle term--or eight months--for violating probation by possessing methamphetamine). At the sentencing hearing, the trial court ordered defendant, jointly and severally with Pierce and South, to pay restitution to Rauch in the amount of $539.57 plus interest, and reserved jurisdiction to set or modify the victim restitution.

Thereafter, the prosecution moved to modify the victim restitution award for Rauch and to award restitution to additional victims AT&T, PG&E, and Kumle. Pursuant to the prosecutor's motions, the trial court ordered defendant to be jointly and severally liable with Pierce and South to pay restitution to Rauch in the amount of $20,357.21, to PG&E in the amount of $20,388.63, to Kumle in the amount of $3,749, and to AT&T in the amount of $4,668.47.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court abused its discretion in ordering him to pay victim restitution jointly and severally to AT&T, PG&E, and Kumle because, he claims, their losses stemmed from South's conduct, not the conduct for which defendant was convicted. We disagree.

---

[4] Pierce pleaded no contest to first degree robbery (§ 211) and admitted he voluntarily acted in concert (§ 213, subd. (a)(1)(A)) with defendant and South. (*Pierce*, *supra,* 234 Cal.App.4th 1334.) We considered Pierce's unrelated challenge to the trial court's restitution order in *Pierce.*

4

Section 1202.4, subdivision (a)(1) provides:  "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime."  (§ 1202.4, subd. (a)(1).)  To this end, section 1202.4, subdivision (f) provides:  "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (§ 1202.4, subd. (f).)

We review the trial court's victim restitution order for abuse of discretion.  (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)  We draw all reasonable inferences in favor of the trial court's order and will affirm it if there is substantial evidence to support it.  The statute does not require "any particular kind of proof" and "[n]o abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered."  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.)

For a defendant sentenced to prison, "[c]ourts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction."  (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247 [construing "criminal conduct" language in § 1202.4, subd. (f)].)  California has "adopted the 'substantial factor' test in analyzing proximate cause."  (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321 (*Holmberg*); see also *People v. Jones* (2010) 187 Cal.App.4th 418, 425 [there is "no reason why the various principles involved in determining proximate causation . . . should not also apply in awarding victim restitution"].)  This standard is " ' "relatively broad" ' " and requires " ' "only that the contribution of the individual cause be more than negligible or theoretical." ' "  (*Holmberg,* at p. 1321.)  A force that plays only a theoretical or infinitesimal part of causing an injury or loss is not a substantial factor, but a minor force that causes harm or loss is a substantial factor.  (*Id.* at p. 1322.)

5

In *Holmberg*, the defendant pleaded guilty to possession of stolen property and was ordered to pay victim restitution to the owners of the property. He argued that the restitution award was improper because the victims' losses were caused by the burglary and theft of the property rather than by his mere possession. The appellate court rejected this argument, nothing that "there can be more than one cause of injury and that multiple causes can combine to cause harm." (*Holmberg, supra,* 195 Cal.App.4th at p. 1322.) The court found it significant that the defendant had obtained the property on the day it was stolen. Because the defendant did not turn the property over to the police, the "[d]efendant's conduct played far more than a negligible or theoretical part in bringing about the victims' injuries and was a substantial factor in causing the harm they suffered." (*Ibid.*)

Likewise, defendant's conduct here was a substantial factor in causing harm to AT&T, PG&E, and Kumle. Although defendant was not involved in the high-speed chase, and may not have been in the truck at all, he was instrumental in planning and executing the robbery, which was still underway at the time of the crash. (See *People v. Carroll* (1970) 1 Cal.3d 581, 585 ["the crime of robbery is not complete until the robber has won his way to a place of temporary safety"].) The probation report establishes that the robbery set into motion a chain of events that precipitated South's flight and culminated in the crash causing damage to AT&T, PG&E, and Kumle. But for the robbery, South would have had no reason to flee, and there would have been no high-speed chase and crash causing damage. On this record, the trial court could reasonably conclude that defendant's conduct was a substantial factor in causing the economic losses that AT&T, PG&E, and Kumle incurred.

Defendant relies on *People v. Leon* (2004) 124 Cal.App.4th 620 (*Leon*) for the proposition that he cannot be liable for economic losses caused by South. Defendant's reliance on *Leon* is misplaced. In *Leon*, the trial court ordered the defendant to pay restitution jointly and severally for four forged checks, despite the fact that he was only

6

involved in and convicted of forging one check, while his codefendant was convicted of forging the others. (*Id.* at p. 622.) The Court of Appeal reversed, determining that the defendant should only pay restitution for the one check he had forged since there was nothing on the record indicating that he aided and abetted his codefendant in forging the three other checks. (*Ibid.*) In this case, by contrast, defendant and South acted together in planning and executing the robbery that resulted in the high-speed chase, crash, and resulting damage. As we have discussed, defendant's conduct was a substantial factor in causing the economic losses that AT&T, PG&E, and Kumle incurred. On this record, we perceive no abuse of discretion in the trial court's decision to hold defendant jointly and severally liable for those losses. (See *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1535 [trial court has authority to hold defendants jointly and severally liable for victim restitution].)

## DISPOSITION

The judgment is affirmed.

    BLEASE    , Acting P. J.

We concur:

    NICHOLSON    , J.

    MURRAY    , J.