[No. B086525. Second Dist., Div. Six. Nov. 7, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR Q. RAMIREZ, Defendant and Appellant.

**COUNSEL**

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Juliet W. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Victor Q. Ramirez was convicted by a jury of second degree robbery (Pen. Code, §§ 211, 212.5) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), a lesser included offense within the charged offense of attempted murder. (Pen. Code, §§ 664, 187.)[1] The jury also found that Ramirez intentionally inflicted great bodily injury upon the victim (§ 12022.7) and used a deadly weapon in the commission of each offense. (§ 12022, subd. (b).) The trial court imposed an aggregate unstayed term of nine years, composed of the upper five-year term for the robbery count, a three-year consecutive term for the great bodily injury enhancement, and one year for use of the knife. Sentence on the assault count was stayed pursuant to section 654.

Appellant's convictions formed the basis for violation of probation in another case, People v. Ramirez (Super. Ct. Ventura County, No. CR31765). He admitted the violation and the trial court imposed a consecutive eight-month sentence and a $200 restitution fine.

Appellant contends the trial court erred by: (1) imposing the great bodily injury enhancement in connection with the robbery count because the evidence was insufficient to establish that the injury occurred during the commission of the robbery; (2) failing to instruct the jury that it must reach a unanimous verdict on the question whether the great bodily injury occurred during the commission of the robbery; (3) imposing a $10,000 restitution fine without finding that appellant had the ability to pay the fine; and (4) imposing separate restitution fines in this case and a related probation violation case which, when considered together, exceed $10,000. We affirm.

On February 15, 1994, Tuan Le drove his cousin Chi Dang to the "Stop and Go" market in Oxnard. When Dang went inside the store, appellant approached Le, who was waiting in the car, and asked for money. Le told appellant that he had given all his money to his friend. Dang walked out of the store and Le told him to give appellant some change. Dang gave appellant a few dollars before getting into the car.

Le started the car and backed away from his parking place. When he stopped to shift the car into first gear, appellant stuck his head through the open driver's side window, grabbed Le by the hair, held a knife to Le's neck and demanded more money. After Le and Dang gave appellant all the cash

---

[1] All statutory references are to this code unless otherwise stated.

they had, appellant told them to leave and warned them not to return to the neighborhood because, "if I see you guys, I'm going to kill you."

Le was terrified and tried to drive out of the parking lot. He "spun the tires and began to back up very fast and then the car . . . stalled." He had traveled only 45 feet when appellant once again approached Le through the open car window. Appellant stabbed Le twice in the chest, once in the back and at least once on the arm. Although he was bleeding profusely, Le started the car and drove away. After a few moments, Le stopped. Dang helped Le into the passenger seat and drove to a nearby hospital. Le underwent emergency surgery to repair life-threatening lacerations to his heart. He remained in the hospital for 12 to 13 days. As a result of the injuries he suffered during the attack, Le has been unable to return to his work as a commercial fisherman.

 Appellant contends that the trial court erred in imposing the enhancement for great bodily injury because there was insufficient evidence to prove that appellant stabbed Le during the commission of the robbery. He theorizes that he was in unchallenged possession of the victim's property and had no reason to flee the scene of the crime before he stabbed Le. Accordingly, appellant contends the robbery was complete before the stabbing occurred, the stabbing constitutes an entirely separate crime, and the injuries it inflicted may not be used to enhance his sentence for robbery. We disagree.

The general rules attendant to when a robbery is "over" provide the rationale for the resolution of appellant's contention in this somewhat unusual situation. "The nature of the crime [of robbery] is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety." (*People* v. *Carroll* (1970) 1 Cal.3d 581, 585 [83 Cal.Rptr. 176, 463 P.2d 400]; see also *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1166 [282 Cal.Rptr. 450, 811 P.2d 742]; *People* v. *Taylor* (1995) 32 Cal.App.4th 578, 581 [38 Cal.Rptr.2d 127]; *People* v. *Johnson* (1992) 5 Cal.App.4th 552, 559 [7 Cal.Rptr.2d 23].) But what if the robber is content to remain, orders the victim to leave, and then assaults the victim before he or she is able to do so?

Appellant claims that the parking lot was a place of temporary safety for him because he was content to remain there while the terrified victim tried to escape. Appellant's subjective feeling of security, i.e., his inability to appreciate the risk of staying at the scene of the crime, is irrelevant. "[T]he issue

to be resolved is whether a robber [has] actually reached a place of temporary safety, not whether the defendant thought that he or she had reached such a location." (*People* v. *Johnson, supra,* 5 Cal.App.4th at p. 560.)

■ The scene of a robbery is not a place of temporary safety, even if it is the victim and not the robber who attempts to escape. (*People* v. *Carroll, supra,* 1 Cal.3d at p. 585; see also *People* v. *Fields* (1983) 35 Cal.3d 329, 365 [197 Cal.Rptr. 803, 673 P.2d 680].) Infliction of great bodily injury at the scene of the robbery may facilitate the robber's ultimate "getaway" to a "place of temporary safety." Disabling the victim will necessarily retard the victim from reporting the offense to the police.

"In cases involving a kidnapping and robbery, courts have held . . . that the evidence supported the conclusion the robber had not reached a place of temporary safety so long as the victim [remains] under the robber's control. [Citations.]" (*People* v. *Carter* (1993) 19 Cal.App.4th 1236, 1251 [23 Cal.Rptr.2d 888].) Even where there is no kidnapping charge, while the victim is subject to further attack, the victim is no less under the robber's "control." ■ Where, as here, the robber is content to remain at the scene and the infliction of great bodily injury is close to the robbery in terms of time or distance, the robbery is not "over." Phrased otherwise, the robbery is not "over" until the victim has reached a place of temporary safety.

■ Whether a robbery is "over" is a determination for the trier of fact unless the court determines, as a matter of law, that the infliction of great bodily injury is so far removed in terms of time or distance that the robbery is "over" as a matter of law. ■ Here, the jury impliedly determined that the public parking lot of a convenience store which was the scene of a robbery and a brutal knife attack was not a "place of temporary safety" for appellant. Substantial evidence supports the jury's determination on this issue. We also observe that the parking lot was quite obviously not a place of temporary safety for the victim.

■ Appellant's second contention is also without merit. In connection with the great bodily injury enhancement allegation, the jury was instructed: "If you find the defendant guilty of Counts 1 [second degree robbery], 2 [attempted murder], or the lesser included crime of assault with a deadly weapon, you must determine whether or not such defendant, with the specific intent to inflict such injury, did personally inflict great bodily injury on TUAN LE in the commission of Counts 1, 2 or the lesser included crime." Appellant argues that, because the instruction was phrased in the disjunctive, the jury could have found the enhancement allegation true with respect to

both offenses, even if members of the jury disagreed about whether the robbery was completed before the stabbing occurred. He opines that the trial court therefore had a duty to instruct the jury sua sponte that, in order to find the enhancement allegation true for the robbery count, it must unanimously agree that appellant inflicted great bodily injury during the commission of the robbery.

Appellant claims it is impossible to determine whether the jury reached a unanimous verdict on this point. We disagree. The jury was adequately instructed on when a robbery is completed.[2] It was also instructed that it must unanimously agree on the verdict for each count and each enhancement allegation. The verdict form for the second degree robbery count plainly states the jury's finding that *"in the commission of the above offense* the defendant, with the intent to inflict such injury personally inflicted great bodily injury upon Tuan Le."* (Italics added.) The verdict form leaves no doubt that the jury unanimously agreed that appellant inflicted great bodily injury during the commission of the robbery.

The fact that the prosecution alleged the stabbing as a separate and distinct offense, i.e., attempted murder, does not mean that the People were foreclosed from attempting to prove that the injuries inflicted attached to the robbery. "[E]ach count in an accusatory pleading . . . charges a separate and distinct offense [and] must stand on its own merit and the disposition of one count has no effect or bearing on the other counts in the accusation. [Citations.]" *(People* v. *Ham* (1970) 7 Cal.App.3d 768, 776 [86 Cal.Rptr. 906]; *People* v. *Chacon* (1995) 37 Cal.App.4th 52, 62, fn. 4 [43 Cal.Rptr.2d 434].)

 Appellant's third contention is also without merit. At the time of the offenses (Feb. 15, 1994) and of the sentencing hearing (July 29, 1994), Government Code section 13967, subdivision (a) provided: "Upon a person being convicted of . . . one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than two hundred dollars ($200), subject to the defendant's ability to pay, and not more than ten thousand dollars ($10,000)." Appellant argues that the trial court erred by imposing a restitution fine of $10,000 without considering his ability to pay.

---

[2]"The commission of the crime of robbery is not confined to a fixed place or a limited period of time. [¶] A robbery is still in progress after the original taking of physical possession of the stolen property while the perpetrator is in possession of the stolen property and fleeing in an attempt to escape. . . . [¶] A robbery is complete when the perpetrator has eluded any pursuers, and is in unchallenged possession of the stolen property after having effected an escape with such property." (CALJIC No. 9.44.)

Former Government Code section 13967, subdivision (a) did not require "an express determination, on the record" concerning a defendant's ability to pay a restitution fine. (*People* v. *Frye* (1994) 21 Cal.App.4th 1483, 1485 [27 Cal.Rptr.2d 52].) We may infer that the trial court made all findings necessary to support its decision. (*Id.*, p. 1486.) ■ In determining whether a defendant has the ability to pay a restitution fine, the trial court may consider the defendant's future ability to pay, including his ability to earn wages while in prison. (*Id.*, p. 1487.) Where the defendant is capable of supporting himself with legitimate employment, the trial court may also consider his ability "to find and maintain productive employment once his sentence is completed." (*People* v. *Staley* (1992) 10 Cal.App.4th 782, 786 [12 Cal.Rptr.2d 816].)

■ Appellant correctly notes that he will be unable to pay the entire fine out of his prison wages even if he works at the highest prison wage scale for the entire nine-year term. However, the probation report indicates that appellant has been employed in the past. There is no evidence that he is physically or mentally unable to find legitimate employment upon completion of his sentence. We conclude therefore that the trial court's implied finding of ability to pay is supported by the evidence.

At the time appellant committed the robbery, he was on probation in case People v. Ramirez, *supra*, No. CR31765. Appellant was sentenced to an eight-month consecutive prison term and ordered to pay a $200 restitution fine. He argues that the trial court erred by imposing two restitution fines and by requiring him to pay more than the statutory maximum of $10,000 in restitution. We do not reach the merits of this claim. Appellant did not file a notice of appeal in this case. ■ "The filing of the notice of appeal is indispensable, in order to enable the appellate Court to obtain jurisdiction of the cause. [Citations.]" (*Bonds* v. *Hickman* (1866) 29 Cal. 460, 463.) We have no appellate jurisdiction to modify the judgment in People v. Ramirez, *supra*, No. CR31765.

In any event, we observe that former Government Code section 13967 required the trial court to impose a single restitution fine in each case which could not exceed $10,000, regardless of the number of victims involved or counts charged. (*People* v. *Sutton* (1989) 212 Cal.App.3d 1254, 1259 [261 Cal.Rptr. 194]; *People* v. *Frey* (1989) 209 Cal.App.3d 139, 142 [256 Cal.Rptr. 810].) Here, the restitution fines at issue were imposed in two separate cases and in neither case did the fine exceed the statutory maximum.

The judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 15, 1994.