Filed 6/3/14  P. v. Underwood CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DIARMEN BART UNDERWOOD,<br><br>    Defendant and Appellant. | D063485<br><br><br><br>(Super. Ct. No. SCD242134) |

APPEAL from a judgment of the Superior Court of San Diego County, Desiree Bruce-Lyle, Judge.  Affirmed, as modified with directions.

Marianne Harguindeguy Cox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez, Lynne G. McGinnis and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Diarmen Bart Underwood of assault with force likely to produce great bodily injury (count 2, Pen. Code, § 245, subd. (a)(4); all further references are to the Penal Code unless otherwise indicated). The jury also found true the allegations that: (1) Underwood personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)), (2) Underwood had one prior serious felony conviction (§ 667, subd. (a)(1)), and (3) Underwood had one prior strike conviction (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)).

The jury was unable to reach a verdict on Underwood's robbery charge (count 1, § 211) and the court later dismissed it. Underwood filed a motion for a new trial citing the fact that the trial court refused to grant his requested self-defense instructions. The court denied Underwood's motion and sentenced him to 11 years in prison.

Underwood appeals his conviction of assault with force likely to produce great bodily injury, arguing that the trial court prejudicially erred by refusing to grant his self-defense instruction because it was supported by substantial evidence. We disagree. The record fails to reveal substantial evidence to support Underwood's claim of self-defense. Therefore, the trial court's judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are largely undisputed. During an evening in the Gaslamp, Matthew Tanous (Tanous) participated in a pub crawl. A former Marine and a current full time college student, Tanous spent several tours in Iraq and suffers from posttraumatic stress disorder (PTSD), which he successfully controls with medication. Tanous had at least seven drinks over the course of the evening and had gotten into a

2

verbal argument with a bartender at a bar on Fourth Avenue and G Street, in downtown San Diego. The bouncer at the bar, a friend of Tanous's, suggested he go home.

On Tanous's walk back to his apartment, he encountered Underwood, who had watched Tanous leave the bar and had asked Tanous's bouncer friend if Tanous was going to be all right. Tanous traveled away from the bar on Fourth Avenue and then took a right onto G Street, with Underwood quickly following behind. Underwood caught up with Tanous and asked to use his cell phone. Tanous obligingly handed it to him because Underwood appeared clean cut and nonthreatening. Underwood made a few calls and then told Tanous that Underwood's friends were not answering. Underwood put Tanous's cell phone in his pocket and turned to leave. Tanous attempted to verbally stop Underwood by saying, "What are you doing?" "Give it back, I [tried to] help you," and "How dare you?" Underwood responded by saying that Tanous was "not going to get [the cell phone] back" and to "[l]et it be." Tanous is 5 feet 7 inches tall and approximately 160 or 170 pounds. Underwood is 6 feet 2 inches tall and approximately 200 pounds. Underwood again turned to leave, but Tanous followed him and demanded that Underwood return the phone.

When Tanous continued to follow Underwood, Underwood turned around, put his fist in Tanous's face, and told him to stop following him or he would knock Tanous out. Tanous reached out and grabbed Underwood's wrist or hand, and Underwood turned around and hit Tanous in the face, knocking him to the ground. Tanous briefly lost consciousness. When Tanous came to, he saw Underwood standing away from him and approached him. The two began to fight. Tanous received a gash above his left eye.

3

Tanous followed in a renewed attempt to regain his cell phone, and the two began to fight for a second time in front of a Ralphs grocery store on G Street and First Avenue. When Tanous chased after the fleeing Underwood, he said, "Stop . . . [s]omeone call the police . . . [h]e stole my phone," and "Give me back my [expletive] cell phone!" He also told a security guard standing outside of the Ralphs to call the police because Underwood had stolen his phone.

Two police officers saw Tanous and Underwood fighting in front of the grocery store. When the officers told the two men to stop fighting, Underwood attempted to flee, but was detained. One of the officers asked Underwood if he had Tanous's property, and Underwood said he did not, but the officer located Tanous's cell phone inside of a planter box where the officers had detained Underwood. Tanous stated he did not see Underwood place Tanous's phone in the planter box.

The police officers initially restrained Tanous, but he cooperated with them when they told him to stop fighting. They later characterized him as intoxicated but coherent. The police officers also noticed Tanous had a laceration above his left eyebrow. Later that morning, Tanous drove himself to the veteran's hospital in La Jolla where he received seven stitches for the laceration above his left eye. Tanous was also given an MRI or a CAT scan, and was placed in a neck brace.

At trial, the defense offered evidence to suggest Underwood reasonably used force to defend himself from Tanous's attempts to regain his cell phone because Tanous was a combat vet suffering a PTSD episode. Underwood requested an instruction on self-

4

defense as an affirmative defense to both charges.  The trial court denied Underwood's request as to both charges.

## STANDARD OF REVIEW

The trial court has a duty to instruct the jury on a defense the defendant relies on when substantial evidence supports it and the defense is not inconsistent with the defendant's theory of the case.  (*People v. Breverman* (1998) 19 Cal.4th 142, 157.)  Substantial evidence in support of a defense instruction is that which is sufficient for a reasonable jury to find in favor of the defense.  (*People v. Hanna* (2013) 218 Cal.App.4th 455, 462, citing *People v. Salas* (2006) 37 Cal.4th 967, 982.)  The existence of *any* evidence, no matter how weak, does not justify an instruction.  (*People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.)

## DISCUSSION

### A.  A Self-Defense Instruction Was Not Supported by Substantial Evidence

A person may use any necessary force to protect his or her property from wrongful injury. (Civ. Code, § 50.)  Additionally, a person who is about to be injured may lawfully resist the commission of a public offense. (§ 692, subd. (1).)  That person may use sufficient force to prevent the offense against his or her person or to prevent an illegal attempt to take property in his or her lawful possession. (§ 693.)  A person's right to use force is limited by the reasonableness of his or her belief that it is necessary at the time and under the particular circumstances.  (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1057 (*Ross*) [in the context of self-defense, noting the test is not whether the force used appeared excessive in hindsight, but whether it appeared necessary at the time].)

The law grants a reasonable margin to the victim, within which he or she may err on the side of his or her own safety. (*Ibid*.)

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, against his will, and by means of force or fear. (§ 211.) Robbery requires the specific intent to deprive the victim of his or her property permanently. (*People v. Smith* (2009) 177 Cal.App.4th 1478, 1490.) However, the intent requirement is satisfied if the actor intends to take the property temporarily, but for an unreasonable time so as to deprive the victim of a major portion of the property's value or enjoyment. (*People v. Avery* (2002) 27 Cal.4th 49, 58-59 (*Avery*).) The robbery continues during the perpetrator's escape and until he or she reaches a place of temporary safety. (*People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1374.)

Here, the prosecution demonstrated overwhelming evidence that Tanous reasonably believed Underwood intended to permanently deprive him of his cell phone by means of force or fear. The prosecution provided testimony from the bouncer at the bar that Underwood profiled Tanous, knew he was drunk, and went out of his way to ask him to use his cell phone, instead of asking one of the many other patrons who were leaving the bar at the time. The prosecution also demonstrated that after Underwood put Tanous's cell phone into his pocket and turned to walk away, he told Tanous to "let it be" and he was not "going to get the cell phone back." Additionally, when Tanous justifiably attempted to retrieve his property, Underwood threatened Tanous physically and then used actual force by striking Tanous in the face and knocking him to the ground.

6

The defense failed to provide any evidence drawing into question the reasonableness of Tanous's belief that he was at risk of being robbed in his exchange with Underwood. Although Underwood allegedly said Tanous would get his cell phone back when they got to Tanous's apartment, this fails to qualify as substantial evidence supporting a self-defense instruction because Underwood had no right to place conditions on the return of Tanous's property, the defense failed to demonstrate that Underwood knew exactly where Tanous lived, and Underwood was walking away from Tanous while at the same time telling Tanous not to follow him and that he would not get the cell phone back. Such evidence, taken in light of the reasonable margin the law affords to the victim in order to protect his or her property, suggests Tanous's use of force to regain his cell phone was reasonable at each stage of their engagement. (See *Avery, supra,* 27 Cal.4th at pp. 58-59.) Tanous reasonably believed that Underwood was stealing his cell phone and that it was ongoing because Underwood continued to flee with the cell phone without giving it back or clearly relinquishing it. Although the police later found Tanous's cell phone in the planter box where they had ultimately detained Underwood, there was no evidence that Underwood deposited the phone in the planter box prior to Tanous's use of force against Underwood, or that Tanous was aware that Underwood had relinquished control of the phone.

Therefore, the record does not demonstrate substantial evidence supporting Underwood's self-defense instruction because Tanous was lawfully using reasonable force to regain his property at each stage of his engagement with Underwood. Because Tanous was lawfully using force throughout their altercation, at no point did

7

Underwood's return of force become justified. Had Underwood given the cell phone back or clearly relinquished it, indicating the termination of the apparent theft, there would have been no need for Tanous's continued use of force. Since that is not the case here, Underwood had no right of self-defense.

### B. Appellant Suffered No Prejudice

Underwood also argues that because substantial evidence supported a self-defense instruction, the trial court prejudicially erred by not granting it, thereby violating his right to a jury trial under the Sixth Amendment to the United States Constitution. Because we reject Underwood's initial contention and find that substantial evidence did not support such an instruction, we conclude the trial court's decision not to instruct on self-defense did not violate Underwood's right to a jury trial.

### C. Trial Court's Imposition of Fines Pursuant to Sections 1202.44 and 1202.5

The parties both agree the trial court improperly imposed a probation revocation fine of $600 (§ 1202.44) and a theft fine of $38 (§ 1202.5). Underwood was sentenced to state prison and not to "a conditional sentence or a sentence that includes a period of probation." (§ 1202.44.) Additionally, Underwood was not convicted of a theft-related offense, but of assault by means of force likely to produce great bodily injury. (§ 245, subd. (a)(4).) Therefore, we direct the trial court to strike both fines.

### D. Abstract of Judgment

At sentencing the trial court imposed a six-year term for the assault offense. It imposed five years for the serious felony prior conviction (§ 667, subd. (a)(1)) and stayed the sentence for the infliction of great bodily injury (§ 12022.7, subd. (a)). The abstract

of judgment erroneously reflects a stay of the serious felony prior conviction and imposes a five-year term for the great bodily injury enhancement.  In other words it reverses the sentences on the enhancements from that which was lawfully imposed by the court.

The parties agree the abstract must be amended to accurately reflect the sentence imposed.  We will remand the case to the trial court to strike the probation revocation and theft fines and to correctly reflect the sentences for the enhancements.

DISPOSITION

The trial court is ordered to strike the probation revocation and theft fines.  The court is also directed to amend the abstract of judgment to properly reflect the sentences for the enhancements as set forth in this opinion and to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.