Filed 12/2/20  P. v. Sosa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTONIO SOSA,<br><br>    Defendant and Appellant. | G057632<br><br>(Super. Ct. No. 18CF3098)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Antonio Sosa appeals from a judgment after a jury convicted him of first degree burglary. He argues the trial court erred in instructing the jury and by imposing fines, fees, and assessments. Neither claim has merit, and we affirm the judgment.

FACTS

One Halloween morning, E.J. was riding her bicycle around her neighborhood when she saw Sosa picking through trash cans down the street. She continued riding her bicycle past him. When she looked back, E.J. saw Sosa walking up the driveway of *** E. R. Avenue (the Property). E.J. saw Sosa walk to the threshold of the open garage.

Sosa reached into and touched a couple of items inside the garage. He simultaneously pulled on a piece of plywood and bicycle handlebar to free the bicycle from behind the plywood, but he was unsuccessful. E.J. yelled out, "Stop, get out of there." Sosa stopped momentarily but resumed trying to dislodge the bicycle. E.J. yelled at him again. Sosa stopped and walked away. E.J. called the police, described Sosa as "a male, possibly [B]lack, carrying two trash bags[,]" and indicated the direction in which he walked. E.J. did not see anyone else that day matching that description.

About 10 minutes later, police arrived at the scene. Nearby, an officer saw Sosa carrying two bags of recyclables over his shoulder and digging through trash cans. The officer described Sosa as having dark skin consistent with the report of a Black man. There was no one else in the area matching E.J.'s description.

The officer parked his patrol vehicle, approached Sosa on foot, and asked him to put his belongings on the ground. Sosa complied and was initially cooperative. However, Sosa placed his hands inside his front pockets. Because the officer had not done a patdown search, the officer was concerned Sosa may be drawing a weapon. The officer twice ordered him to keep his hands out of his pockets.

Sosa refused to comply, continued to dig into his pockets, and stepped away from the officer. The officer reached for Sosa's wrists, but he continued to back

2

away.  Another officer arrived, and they told him to take his hands out of his pockets, but he refused.  Using moderate force, the officers grabbed Sosa around his waist, lifted him up, brought him down on some grass, and handcuffed him.

At that point, E.J. arrived on her bicycle.  Based on his clothing and belongings, E.J. identified Sosa as the person who tried to take the bicycle from the garage.  Specifically, while pointing at Sosa, E.J. said, "'I saw that man'" go into the garage and "'grab a bike.'"  However, E.J. indicated she could not identify his face.

An information charged Sosa with first degree burglary (Pen. Code, §§ 459, 460, subd. (a), all further statutory references are to the Penal Code, unless otherwise indicated) (count 1), and misdemeanor resisting and obstructing an officer (§ 148, subd. (a)(1)) (count 2).  The information alleged a non-accomplice was present during the commission of count 1 (§ 667.5, subd. (c)(21).

At trial, E.J. testified she told officers that Sosa was the culprit based on his "clothing and stuff," but she could not recognize his face.  When asked whether she could identify the man in court, she answered, "I can't say that I recognize his face, no."  Sosa's defense focused on lack of intent and not on identity.  Counsel argued there was insufficient evidence to demonstrate he was doing anything more than examining the bicycle.

The jury convicted Sosa of count 1 but found the enhancement not true and acquitted him of count 2.  The trial court sentenced him to the low term of two years in prison.  The trial court imposed the following fines, fees, and assessments:  $300 restitution fine (§ 1202.4, subd. (b)); $40 court operations assessment (§ 1465.8, subd. (a)(1)); $30 criminal conviction assessment (Gov. Code, § 70373); *stayed* $300 parole revocation restitution fine (§ 1202.45); and "$10 fee to the Crime Prevention Fund."

DISCUSSION

## I. CALCRIM No. 315

Sosa argues CALCRIM No. 315 is constitutionally infirm. This issue is currently pending before the California Supreme Court in *People v. Lemcke*, review granted October 10, 2018, S250108. The current state of the law and the state of the evidence foreclose his claims.

Without objection, the trial court instructed the jury with CALCRIM No. 315, as relevant here, as follows: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following question[]: [¶] . . . [¶] *How certain was the witness when . . . she made an identification?* [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty."

The Attorney General argues Sosa forfeited this claim because he did not request a modification. We agree. "If defendant had wanted the court to modify the instruction, he should have requested it. The trial court has no sua sponte duty to do so. [Citations.]" (*People v. Sánchez* (2016) 63 Cal.4th 411, 461 (*Sánchez*).) Sosa did not request a modification, and thus he forfeited this contention.

Assuming his claim is preserved, there was no error. Our Supreme Court has repeatedly approved the use of certainty as a factor in evaluating eyewitness identifications. (*Sánchez, supra,* 63 Cal.4th at pp. 461-462 [discussing cases approving CALJIC No. 2.92, CALCRIM No. 315's predecessor].) Sosa's reliance on scientific evidence and out-of-state authority is misplaced. Until the Supreme Court overrules its prior precedent, we are bound by its decision, as was the trial court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Rodriguez* (2019)

4

40 Cal.App.5th 194, 199-200.) In light of *Sánchez*, Sosa has not demonstrated any objection to the certainty factor would have been successful. He admits as much in arguing trial counsel's failure to object would have been futile based on *Sánchez*.

Assuming there was error, Sosa was not prejudiced because it was not reasonably probable he would have obtained a more favorable result had the trial court deleted the certainty factor. (*Sánchez, supra,* 63 Cal.4th at p. 463.) Like in *Sánchez*, the instruction did not suggest certainty equals accuracy but only that the jury could consider certainty. Again, we note that at trial Sosa's theory was lack of intent not misidentification, and on appeal, he does not challenge the sufficiency of the evidence on count 1. Based on Sosa's efforts to dislodge the bicycle after E.J. yelled at him to stop, the jury could reasonably infer he intended to steal the bicycle. (*People v. Lewis* (2001) 25 Cal.4th 610, 643 [intent for burglary inferred from totality of evidence].) Additionally, there was strong evidence Sosa was the person E.J. observed. Minutes after E.J. called the police, Sosa was at the scene. Sosa matched the description of the person E.J. gave to the police. E.J. said the man was "possibly Black" and had two trash bags. The officer saw a man who had dark skin and carried two trash bags. Neither E.J. nor the officer saw anyone else who matched the description. "Indeed, we would find giving the instruction harmless beyond a reasonable doubt." (*Sánchez, supra,* 63 Cal.4th at p. 463.)

## II. Fines, Fees & Assessments

Sosa asserts the matter must be remanded for the trial court to determine whether he has the ability to pay the fines, fees, and assessments. We disagree.

Sosa first complains the $10 crime prevention fund was unlawful because the trial court did not specify the legal basis for the fine, and the fine is not included on the abstract of judgment. The fine was lawful, but the court records must be corrected.

"In a criminal case, it is the *oral pronouncement of sentence* that constitutes the judgment. [Citation.]" (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.) The abstract of judgment is a contemporaneously prepared "clerical *record* of the conviction

and sentence." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070.)  In general, if the "abstract of judgment is different from the oral pronouncement of judgment, the oral pronouncement controls.  [Citations.]" (*People v. Mullins* (2018) 19 Cal.App.5th 594, 612.)

Section 1202.5, subdivision (a)(1), states a trial court "shall" impose a $10 fine for inter alia a burglary conviction to fund crime prevention programs.  (*People v. Uffelman* (2015) 240 Cal.App.4th 195, 200.)  Although the trial court did not specify the legal authority for the fine, the fine was lawful.  However, not only is the fine not in the abstract of judgment, it is not in the court's minutes.  We order the court clerk to amend the minutes and the abstract of judgment to reflect the trial court imposed a $10 fine pursuant to section 1202.5, subdivision (a).  We turn to his ability to pay the claim.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), an indigent mother of two who subsisted on public aid because she was unable to work due to cerebral palsy challenged the constitutionality of imposing mandatory court facilities and operations assessment fees and restitution fines without first determining the defendant's ability to pay them.  The court held that imposing the fees and fine on an indigent defendant violated due process.  (*Id*. at pp. 1168, 1171.)  As to the court facilities and operations fees, which the Legislature intended to be revenue raisers and not punishment, the court reasoned imposing these fees on indigent defendants was tantamount to "inflict[ing] additional punishment." (*Id*. at p. 1166, capitalization omitted.)  As to the restitution fine, which the Legislature intended to be additional punishment, the court explained imposing a restitution fine on indigent defendants punished them differently than wealthy defendants because it deprived them of the opportunity to obtain mandatory expungement of the conviction as a matter of right.  (*Id*. at pp. 1170-1172.)

Much has been written throughout the state on whether *Dueñas* was correctly decided.  We need not weigh in on this issue again because any error here was

harmless beyond a reasonable doubt. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140, citing *Chapman v. California* (1967) 386 U.S. 18, 24.)

"'Ability to pay does not necessarily require existing employment or cash on hand.' [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]" (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; *People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1377; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.)

We infer Sosa has the ability to pay the fees and fine from probable future wages, including prison wages. (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 (*Douglas*); see § 1202.4, subd. (d) [ability to pay restitution fine includes future earning capacity].) "Prison wages range from $12 to $56 per month, depending on the prisoner's skill level. [Citations.] The state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b), restitution fine. [Citations.]" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 (*Aviles*).)

Although no hearing was held or requested, the record suggests Sosa had an ability to pay the $380 in fines, fees, and assessments. As Sosa recognizes, the fact he was represented in the trial court and on appeal by appointed counsel does not necessarily demonstrate an inability to pay. "[A] defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine[]" or other fees imposed by the trial court. (*Douglas, supra,* 39 Cal.App.4th at p. 1397.)

Nor is there any indication Sosa, a then 47-year-old felon sentenced to prison for two years, is unable to work. Although the record includes evidence Sosa is transient, the evidence demonstrates he is physically able to work. He wandered the neighborhood searching for recyclables, and he tried to dislodge a bicycle from behind a

7

piece of plywood.  Additionally, he initially resisted an officer before two officers wrestled him to the ground and took him into custody.  Finally, in his sentencing brief, Sosa stated he worked in construction most of his life until 2017 when he lost his job. These facts demonstrate Sosa is physically capable of working and earning money in custody and will be able to pay the $380 in fines, fees, and assessments from his future prison wages.  (*Aviles, supra,* 39 Cal.App.5th at p. 1077 [ability to pay from prison wages or monetary gifts from family and friends].)  To the extent debt remains following his release, it is not reasonable to conclude he would be unable to work and pay that balance. Thus, Sosa will not be without the ability to pay the fines, fees, and assessments while imprisoned.

## DISPOSITION

The judgment is affirmed.  The clerk of the superior court is directed to do the following:  (1) correct the court's minutes to reflect the trial court imposed a $10 crime prevention fund fine pursuant to section 1202.5, subdivision (a)(1); and (2) prepare and transmit an amended abstract of judgment to include the $10 fine imposed under section 1202.5, subdivision (a)(1), to the Department of Corrections and Rehabilitation, Division of Adult Operations.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


GOETHALS, J.

8