Filed 3/28/25  P. v. Morehead CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C099686 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 22CR002757, 22CR002923, 22CR002952, 23CR000679, 23CR000899) |
| v. | |
| BENJAMIN A. MOREHEAD, | |
| Defendant and Appellant. | |

Originally charged with multiple offenses and strike allegations in five separate criminal matters, defendant Benjamin A. Morehead pled guilty to six felonies in exchange for dismissal of the remaining counts and allegations.  He was sentenced to four years eight months in prison.  Without objection, the trial court imposed a $240 court operations assessment ($40 per conviction), a $180 court facilities assessment ($30 per conviction), and $3,600 in restitution fines.  The court subsequently conducted an ability to pay hearing, at appellate counsel's request, and reduced the restitution fines to the statutory minimum of $300 per case, or $1,500 total, but left the mandatory assessments

1

unchanged. The court found defendant had the ability to pay the financial obligations because payments could be deducted from "stipends," or wages, he could earn while in prison.

Defendant's sole contention on appeal is that the trial court erred in imposing the assessments and restitution fines, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the Eighth Amendment prohibition against excessive fines, and equal protection principles. We shall affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Defendant's Multiple Criminal Matters*

In October 2022, defendant kicked in an exterior window on a residence, shattering the glass. He was charged in Tehama County case No. 22CR002757 (Case C)[1] with felony vandalism with over $400 in damage. (Pen. Code, § 594, subd. (a).)[2] It was alleged that defendant had a prior strike conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) for making criminal threats (§ 422).

In November 2022, a Planet Fitness employee reported seeing defendant, who was a member of the gym, standing outside the business aggressively holding a baseball bat after the employee told him he could not bring the bat inside the gym when he tried to enter. Officers found defendant holding an aluminum bat and located a seven-inch kitchen knife with a three-inch fixed blade tucked into the sleeve of his sweatshirt. Defendant was charged in Tehama County case No. 22CR002923 (Case A) with carrying a dirk or dagger (§ 21310) and possession of a weapon commonly known as a billy or blackjack (§ 22210). For both counts, it was alleged defendant had a prior strike conviction for criminal threats.

---

[1] Each case is labeled Case A through Case E consistent with the abstract of judgment.

[2] Further undesignated statutory references are to the Penal Code.

In late November 2022, officers were dispatched to a shopping center after someone reported a person causing a disturbance and refusing to leave the property. They located defendant in front of the store and arrested him on outstanding warrants; he had three live rounds of 5.56 millimeter green tip ammunition in his pocket. Defendant was charged in Tehama County case No. 22CR002952 (Case B) with unlawful possession of ammunition by a felon (§ 30305, subd. (a)(1)) and misdemeanor trespass (§ 602, subd. (o)). Regarding the ammunition offense, it was alleged that defendant had a prior strike conviction for criminal threats.

On December 20, 2022, defendant failed to appear at a scheduled court hearing in Case A after having been released on his own recognizance. As a result, defendant was charged in Tehama County case No. 23CR000679 (Case D) with felony failure to appear (§ 1320, subd. (b)) while he was released from custody on his own recognizance in Case A (§ 12022.1). It was alleged he had a prior strike for criminal threats.

In April 2023, officers located defendant alone in an abandoned home commonly used by squatters; a search of his person revealed a fixed blade weapon (half a pair of scissors) with a three-inch handle and a six-inch blade in his front pants pocket. Defendant was charged in Tehama County case No. 23CR000899 (Case E) with carrying a dirk or dagger. (§ 21310.) The complaint alleged defendant had a prior strike conviction for criminal threats.

On July 25, 2023, defendant resolved all five criminal cases in a global plea agreement. He pled guilty to all felony offenses in an open plea with a maximum potential exposure of six years four months in prison in exchange for dismissal of the remaining charges and allegations as well as dismissal of a sixth case (not at issue in this appeal) with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754.

Specifically, defendant pleaded guilty as follows: in Case A, unlawfully carrying a dirk or dagger (§ 21310, count I) and unlawfully possessing a billy or blackjack (§ 22210; count II); in Case B, unlawful possession of ammunition by a felon (§ 30305, subd.

3

(a)(1)); in Case C, felony vandalism (§ 594, subd. (a)); in Case D, failure to appear on his own recognizance (§ 1320, subd. (b)); and, in Case E, unlawfully carrying a dirk or dagger (§ 21310).

As relevant here, at the sentencing hearing in September 2023, the trial court considered two letters of support submitted on defendant's behalf. Defendant's grandmother explained that defendant had responded well to medication to control his mental health symptoms, was polite and trustworthy, and had a job mowing lawns as a teenager where he "made a very good income for his age." He had also graduated from high school, although he dealt with some educational issues as a youth. The letter from his aunt confirmed that defendant functioned well when properly medicated, and that he intended to attend college and had expressed an interest in becoming a cook.

After finding defendant presented an extreme danger to society, the trial court sentenced defendant to an aggregate determinate term of four years eight months in prison. In Case A, the court imposed two-year terms (the middle term), concurrently, for carrying a dirk or dagger (count I) and possessing a billy or blackjack (count II). The court imposed a consecutive term of eight months (one-third the middle term) for each of the convictions in Cases B, C, D, and E.

For Case A, the trial court imposed a $1,200 restitution fine (§ 1202.4), an identical $1,200 parole revocation restitution fine (§ 1202.45), which was suspended pending successful completion of parole; a $60 court facilities assessment (or $30 per count) (Gov. Code, § 70373); and a $80 court operations assessment (or $40 per count) (§ 1465.8). For all other cases, the court imposed a $600 restitution fine, a suspended $600 parole revocation restitution fine, a $30 court facilities conviction assessment, and a $40 court operations assessment. For Case C, the court also reserved jurisdiction on the issue of direct victim restitution for the broken window. During the hearing, defendant never objected to the restitution fines and fees, requested an ability to pay hearing, or otherwise argued that he was unable to pay these financial obligations.

4

Defendant timely appealed. While his appeal was pending, defendant's appointed appellate counsel filed a letter in the trial court pursuant to section 1237.2. Citing *Dueñas*, the Eighth Amendment, and equal protection, the letter requested that the trial court stay the restitutions fees and assessments pending a determination of defendant's ability to pay them. Among other things, the letter noted the circumstances of defendant's drug-positive birth, his mental health diagnoses, his significant substance abuse issues, and that he was a transient.

In response to appellate counsel's letter, the trial court conducted an ability to pay hearing on August 20, 2024. At the hearing, defendant's trial counsel stated they were ready to proceed regarding defendant's "ability to pay or lack thereof regarding the fines and fees imposed in his five cases." Defense counsel acknowledged that defendant had been incarcerated for a period and that he was eligible for parole in July 2025, but counsel did not otherwise argue defendant's ability to pay the fines and fees beyond simply requesting that the court find an inability to pay. The People submitted on the issue but noted they "would be interested in hearing whether the defendant has any sort of pay-generating work while he's in [prison]."

The trial court announced its tentative decision to reduce the restitution fines imposed under sections 1202.4 and 1202.45 to the statutory minimum of $300 in each case, for a total of $1,500 for all five cases. The court noted that defendant was going to be incarcerated for at least another 11 months, which it stated was a "per se inability to pay." However, the court then found that defendant "should be able to pay those amounts from his withholding from his stipend." Neither defense counsel nor defendant objected or otherwise argued that defendant could not pay the fees and fines through future deductions taken from any wages he earned while in prison. When the court asked whether defendant or his counsel had any further questions or arguments about the reduction in fees, defendant and counsel both responded no. The court adopted its

5

tentative ruling, imposing $1,500 in restitution fines; the previously imposed mandatory assessments remained unchanged.

## DISCUSSION

### I

### *Mandatory Assessments*

To assist in funding court operations, section 1465.8, subdivision (a)(1) states that a $40 assessment "shall be imposed on every conviction for a criminal offense." To ensure and maintain adequate funding for court facilities, a $30 assessment "shall be imposed" for each misdemeanor or felony conviction. (Gov. Code, § 70373, subd. (a)(1).) Complying with these statutes, the trial court imposed a $240 court operations assessment, and a $180 court facilities assessment based on defendant's six felony convictions. These amounts remained unchanged following the ability to pay hearing.

Relying primarily on *Dueñas*, defendant contends we must strike these mandatory assessments because insufficient evidence supports the trial court's implied finding that he has the ability to pay the assessments.[3] In defendant's view, the court erred in finding an ability to pay given his extensive substance abuse and mental health issues, and because he was a transient and unemployed when convicted on the present offenses. Defendant also argues that it is merely speculative to assume he has an ability to pay based on withholdings from potential prison wages because there is no guarantee he will be given a job while incarcerated.

The People contend defendant's inability to pay argument is forfeited because his trial counsel submitted at the ability to pay hearing without offering further argument or evidence. Under the circumstances, we decline to find the issue forfeited. Appellate

---

[3] The trial court did not expressly address the mandatory assessments at the ability to pay hearing, but the previously imposed assessments remained the same.

counsel's section 1237.2 letter brief challenged imposition of the fees and fines based on the same grounds asserted here.

In *Dueñas*, the defendant was an indigent, homeless mother who was caught in a cycle of being unable to pay the fees and fines imposed after several misdemeanor driving on a suspended license convictions. (*People v. Dueñas, supra*, 30 Cal.App.5th at pp. 1160-1161.) Under these extreme circumstances, the appellate court held that imposing a court operations assessment and a court facilities assessment without determining the defendant's ability to pay was "fundamentally unfair" and violated due process under the federal and state Constitutions. (*Id.* at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4, "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.)

Reactions to *Dueñas* have been mixed. Although some courts have followed its reasoning, others have strictly limited it to its facts or simply found that it was wrongly decided. Our Supreme Court is poised to resolve the issue, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, 96-97, review granted November 13, 2019, S257844, which partially agreed with *Dueñas*. (*Id.*, at pp. 95-97.) The Supreme Court will decide in *Kopp*: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?" (See *People v. Kopp*, 2019 Cal. LEXIS 8371.)

Here, we need not decide whether to apply *Dueñas*; although defendant failed to raise an ability to pay objection during the original sentencing hearing, in response to appellate counsel's request pursuant to section 1237.2, the trial court subsequently conducted an ability to pay hearing. At the hearing, the court reduced the restitution fines to the statutory minimum of $300 for each case ($1,500 total) and left the assessments unchanged. In doing so, the court found that defendant had the ability to pay these amounts based on deductions taken from any potential wages he earned while in prison.

7

Because defendant asked for (and received) an ability to pay determination as contemplated by *Dueñas* and *Kopp*, we turn to whether the court erred in determining defendant had the ability to pay the imposed amounts. (Cf. *People v. Lewis* (2009) 46 Cal.4th 1255, 1321 [trial court did not abuse discretion in imposing restitution fine]; see also *People v. Potts* (2019) 6 Cal.5th 1012, 1057 [trial court "was permitted to conclude that the monetary burden the restitution fine imposed on defendant was outweighed by other considerations"].)

We find no abuse of discretion here because we conclude sufficient evidence supports the trial court's ability to pay determination. In deciding whether a particular defendant has the ability to pay fees and fines, a trial court is not limited to a consideration of a defendant's present financial circumstances; rather, the court may consider a defendant's future financial prospects as well. (*People v. Frye* (1994) 21 Cal.App.4th 1483, 1487; *People v. Kramis* (2012) 209 Cal.App.4th 346, 350 [a trial court may consider a defendant's future earning capacity when determining inability to pay].) Here, the court could reasonably determine that defendant had the ability to pay the challenged assessments based on his future ability to earn prison wages. (*People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1377 [sentencing court may consider a defendant's future ability to pay, including his ability to earn wages while in prison]; see also § 2700 ["The Department of Corrections shall require of every able-bodied prisoner imprisoned in any state prison as many hours of faithful labor in each day and every day during his or her term of imprisonment as shall be prescribed by the rules and regulations of the Director of Corrections"].)

Defendant nevertheless argues that the trial court erred in relying on prison wages because there was no evidence to show he will be given a prison job. According to defendant, "[a]n incarcerated person's assignment to a paid position is a privilege dependent on available funding, job performance, seniority and conduct. These factors shall be criteria considered in determining an incarcerated person's eligibility for pay

8

earning status and rate of pay." (Cal. Code Regs., tit. 15, § 3040, subd. (k).) Because none of these criteria were considered at the ability to pay hearing, defendant argues that the court's ability to pay determination based on potential prison wages cannot be sustained.

We disagree. Defendant cites no authority for the suggestion that a court may not consider the potential to earn prison wages unless evidence establishes the defendant *will actually* be given a prison job. Although *People v. Santos* (2019) 38 Cal.App.5th 923, does state, as defendant argues, that a court "may" reasonably consider "housing status, mental illness or disability, receipt of government benefits, and realistic ability to earn prison wages or obtain employment" (*id.* at p. 934), we do not interpret *Santos* to mean each of the identified factors must be definitively proven before a defendant may be found able to pay fees and fines. In any event, in weighing whether defendant had the ability to pay fees and fines, the trial court impliedly considered these factors here. Appellate counsel's letter brief noted defendant had been homeless and unemployed when he committed the offenses and that he suffered from mental health and substance abuse issues. Despite these difficulties, the trial court found defendant had the ability to pay the fees and fines from prison stipend deductions. The police report to which defendant stipulated to as the factual basis for his plea in Case A notes that defendant was a member of a gym at the time of the offense. Based on this fact, the court could reasonably infer that defendant appeared to be able-bodied and available to work as section 2700 requires.

The record, moreover, shows that defendant was only 22 years old at the time of sentencing. According to his family members, defendant had previously worked as a teenager, earning money mowing lawns, and he had graduated from high school. He was interested in being a cook, and wanted to attend college, and probation noted he had completed two courses at a community college. One family member characterized him as trustworthy, polite, and "a hard worker." While defendant did have mental health

issues and had been homeless in the past, his family said he had responded well to medication. And, as previously noted, at the time he committed one of the offenses, defendant was a member of a gym, which likely required payment of membership dues.

Under the circumstances, we find sufficient evidence demonstrates defendant had the ability to pay the mandatory assessments, even if he was not presently employed. (*People v. Frye, supra*, 21 Cal.App.4th at p. 1487 [" '[a]bility to pay does not necessarily require existing employment or cash on hand' "]; *People v. Aviles, supra*, (2019) 39 Cal.App.5th 1055, at p. 1076 [a court may consider a defendant's ability to earn money after his release from custody when determining ability to pay].) We see no abuse of discretion in imposing the challenged assessments under Penal Code section 1465.8 and Government Code section 70373.

## II

### *Restitution Fine*

Relying on the same inability to pay arguments, defendant contends imposing the $1,500 restitution fine (or the statutory minimum of $300 per case) under section 1202.4 violates the Eighth Amendment's prohibition against excessive fines and equal protection principles. We are not persuaded.

Following a criminal conviction, section 1202.4, subdivision (b) requires a trial court to "impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." "If the person is convicted of a felony," like defendant was here, "the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." (*Id.,* subd. (b)(1).) A trial court has discretion in selecting the restitution fine, although the amount imposed must be "commensurate with the seriousness of the offense." (*Ibid*.) Section 1202.4 includes the following formula a court may utilize to calculate a restitution fine: the minimum $300 fine multiplied by the number of years of

10

imprisonment a defendant must serve, multiplied by the number of the defendant's felony convictions. (*Id.*, subd. (b)(2).)

A defendant's inability to pay may be considered only when increasing the amount of the restitution fine above the statutory minimum fine, but under no circumstances shall the inability to pay constitute a compelling and extraordinary reason not to impose a restitution fine. (§ 1202.4, subd. (c).) A court may consider a defendant's future earning capacity when making an inability to pay determination under section 1202.4. (*Id.,* subd. (d).) The defendant bears the burden of demonstrating his inability to pay, and a court is not required to make express findings as to the factors bearing on the amount of the fine, nor must it hold a separate hearing for the fine. (*Ibid*.)

Here, at the ability to pay hearing, the trial court reduced the total restitution fine to $1,500, or the statutory minimum of $300 in each of defendant's five felony cases. At that point, as we have set forth *ante*, the court was not required to consider defendant's ability to pay, because there was no amount imposed above the statutory minimum.

We review de novo defendant's excessive fines challenge under the Eighth Amendment. (*People v. Aviles, supra*, 39 Cal.App.5th at p. 1072.) To determine if a fine is excessive in violation of the federal or state Constitutions (U.S. Const., 8th Amend.; Cal Const., art. I, § 17), we consider: "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 [applying Eighth Amendment analysis to both defendant's federal and state excessive fines claims]; see also *People v. Bajakajian* (1998) 524 U.S. 321, 334 ["The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish"].) "While ability to pay may be part of the proportionality analysis, it is not the only factor." (*Aviles*, at p. 1070, citing *Bajakajian*, at pp. 337-338.)

11

Here, we find that the $1,500 restitution fine imposed for committing six different felony offenses, many involving the possession of weapons or ammunition, on five separate occasions is not grossly disproportional to the level of harm and defendant's culpability in this matter. It was not grossly disproportionate to impose the statutory minimum restitution fine in each case given defendant's threatening, and often violent conduct, that resulted in property damage to at least one victim.

Nor does the fine constitute an equal protection violation.

" ' "Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction." ' " (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1382-1383.) The equal protection guarantee means that all persons under similar circumstances must be treated equally. (*Id.*, at p. 1383.) The equal protection clause, however, does not require "[a]bsolute equality" among all persons. (*Douglas v. California* (1963) 372 U.S. 353, 357.) Courts usually apply rational basis review to equal protection claims that do not involve suspect classifications (*In re Antazo* (1970) 3 Cal.3d 100, 111), and "poverty, standing alone is not a suspect classification" (*Harris v. McRae* (1980) 448 U.S. 297, 323).

Equal protection principles have been applied to invalidate financial obligations imposed in criminal matters under certain circumstances. In *Tate v. Short* (1971) 401 U.S. 395 at pages 396 through 397, for example, the United States Supreme Court held that equal protection was violated when an indigent defendant was committed to a "municipal prison farm" because he could not pay accumulated fines of $425 based on nine convictions for traffic offenses. (See also *Williams v. Illinois* (1970) 399 U.S. 235, 241-242 [invalidating on equal protection grounds a facially neutral statute that authorized imprisonment for an indigent's failure to pay fines]; *Griffin v. Illinois* (1956) 351 U.S. 12, 19 [finding a state's failure to provide indigent defendants in a criminal case with a trial transcript at public expense so that they could obtain adequate appellate

12

review violated the equal protection clause].)  In *In re Antazo, supra*, 3 Cal.3d at pages 108 through 116, the California Supreme Court held that an indigent defendant could not be imprisoned for failure to pay a fine that was imposed as a condition of his probation; otherwise, a violation of equal protection would occur based on wealth.  The court cautioned, however, that it did "not hold that the imposition upon an indigent offender of a fine and penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances of a violation of the equal protection clause."  (*Id.* at p 116.)

Considering the authority we have just discussed, it is clear that defendant was not denied equal protection here.  He was incarcerated for pleading guilty to committing six felonies, not for failing to pay the restitution fine.  Defendant was neither denied access to the trial courts, nor denied transcripts to prosecute his appeal.  Simply put, he was not incarcerated because of his alleged poverty.  Imposition of the statutory minimum restitution fine in this instance does not run afoul of the federal or state guarantee of equal protection under the law.

**DISPOSITION**

The judgment is affirmed.


                                              /s/
                                        Duarte, J.



We concur:



      /s/
Hull, Acting P. J.



      /s/
Mauro, J.


13